45919.   MURRAY v. AMERICARE-MEDICAL DESIGNS, INC.

DEEN, Judge. 1. Counsel for the appellant requested a charge to the jury in the language of the second headnote of *Brown v. Glass,* 46 Ga. App. 323 (167 SE 722). Counsel for appellee objected to this portion of the case being excerpted, and counsel for appellant then said: "Of course, I don't mind the entire case

being quoted." Counsel for appellee then requested a charge embodying the third headnote of the case and appellant's counsel stated, "No objection." At the end of the entire charge the court asked counsel whether they had any objection to any portion thereof and counsel replied in the negative. "A party cannot complain in this court of an instruction to the jury when his counsel at the trial specifically acquiesced in the giving of such instruction." *Irvin v. Oliver,* 223 Ga. 193 (2) (154 SE2d 217). Enumerations of error 7 and 8 are without merit.

2. It appears from the record that the cabinets ordered for the building were built by a company referred to as "Art-Fab" pursuant to a purchase order from "Design and Drafting Service," a branch of the plaintiff corporation. The statement of Depperman, president of the plaintiff, that he was paid for doing shop drawings for this work does not establish that the contract was void because a "dual agency" existed, as contended.

3. The defendant, Dr. Murray, desirous of erecting a medical building, entered into a contract with an Iowa corporation presently named Americare-Medical Designs, Inc., under which it furnished plans and agreed to "Procure contracts and purchase orders, to build the building as per the plans. . . Consultant will supervise construction and all payments from owner to contractors and suppliers will be made only upon consultant's written approval. . . Consultant agrees to take prices from contractors and suppliers and deliver to the owner a set of construction contract proposals and purchase orders totalling not in excess of $80,000, exclusive of consultant's fee." Defendant eventually had the building finished by other persons at a total cost in excess of $80,000. The fee agreed to be paid to the plaintiff for the services and plans was $5,000, half of which was paid in advance. Plaintiff eventually sued the defendant for the balance of the fee, travel expenses, certain extras not included in the contract, and two orders of cabinet work and hardware which it had purchased from third parties, obligated itself to pay for, had delivered to the site, and acceptance of which had been refused by the defendant, totaling $17,920. The jury found against the defendant's counterclaim and entered a verdict of $16,012 in favor of the plaintiff.

In general, the items were contested but each was supported by

some evidence. However, as to the item of $3,000 for ten trips made by Depperman, president of the plaintiff corporation, from Iowa to Mableton, Ga., the evidence demands a finding that what the parties were contracting for to be included in the $5,000 fee was supervisory services, and that additional travel expenses were not part of the contract. Plaintiff contends it is entitled to this sum as damages because of the defendant's breach of the contract under *Code* § 20-1414 which states: "Any necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages." Incurred obligations to pay fall under this rule. *Murphey v. Northeastern Constr. Co.,* 31 Ga. App. 715 (121 SE 848). They must be such as arise in the usual course of events within the contemplation of the parties. *Code* § 20-1407. As stated in *Campbell & Co. v. Mion Bros.,* 6 Ga. App. 134 (64 SE 571), the measure of damages is usually the contract price less what it would have cost the contractor to perform, in other words, the profit; but if the contract is not broken until after the contractor has gone to expense toward its performance, this net loss should also be added to the figure for profit. The amounts paid to subcontractors by the corporation are such sums, regardless of the contract price for furnishing the supervisory services. The travel expenses incurred in the supervisory activity, however, are a part of what the defendant bought for $5,000 under the contract, and this amount, or most of it, must have been included in the verdict rendered. The plaintiff could not recover the *entire* contract price and expenses of compliance in addition although it could theoretically recover any amount spent in compliance plus any proved profit figure up to but not exceeding the contract price. Additionally, the contract under consideration included a penalty clause to the plaintiff if the $80,000 construction cost figure was exceeded, which it admitted was the case, but, disregarding this, the verdict necessarily includes profit *plus* expenses in excess of the total original service contract price, as distinguished from construction costs, and is to that extent illegal. "Exemplary damages can never be allowed in cases arising on contracts." *Code* § 20-1405. The bad faith under which expenses of litigation are allowable means bad

faith in entering into the contract in the first place. *McKenzie v. Mitchell*, 123 Ga. 72 (1) (51 SE 34). To this extent the verdict is unsupported by the evidence. *Malone & Grant Co. v. Hammond*, 6 Ga. App. 114 (5) (64 SE 666).

*The judgment is affirmed on condition that the plaintiff write off from the verdict and judgment the sum of $3,000 travel expenses claimed for supervising construction. Otherwise the judgment is reversed and a new trial ordered. Bell, C. J., and Pannell, J., concur.*

ARGUED JANUARY 5, 1971—DECIDED FEBRUARY 5, 1971—
REHEARING DENIED APRIL 1, 1971—CERT. APPLIED FOR.

*Webb, Parker, Young & Ferguson, John Tye Ferguson, Gilbert D. Spindel,* for appellant.

*J. M. Grubbs, Jr., Adele Platt,* for appellee.

ON MOTION FOR REHEARING.

The appellant strongly contends on re-hearing that proof of the legal obligation of the plaintiff to pay for cabinet and hardware orders it had placed for the benefit of the defendant does not entitle it to recover these amounts in the absence of evidence of actual damages, which cannot be ascertained without proof of the market value of these items. The evidence shows that the cabinet work was shipped on sight draft and was rejected by the defendant. The evidence is in conflict as to whether its admitted flaws resulted from poor construction, from damage in transit, or both. The defendant rejected the manufacturer's tender of repair and replacement. Where these cabinets are now does not appear, nor their value. Such evidence as there is as to the present location of the hardware, also, is hearsay. Since this is not an action between buyer and seller, the provisions of § 2-703 of the Uniform Commercial Code cannot be directly applied, and the measure of damages might vary according to the remedy thereafter chosen by the seller. It is obvious, however, that when this defendant pays off the judgment against him representing damages equivalent to the purchase price of the casework and hardware he becomes by that fact the owner of the merchandise and entitled to whatever value

it may have, since to allow the plaintiff or the manufacturer full payment *plus* goods involved would result in an unjust enrichment. In this connection see *Code Ann.* § 109A-2—709.