47787. REDMAN DEVELOPMENT CORPORATION v. PIEDMONT HEATING & AIR CONDITIONING, INC.

CLARK, Judge. Redman Development Corporation, hereinafter referred to as "Redman," is a Texas company engaged nation-wide in construction projects. In such work it acts as its own general contractor. In doing so it uses a printed form contract prepared by out-of-state counsel which contains an exculpatory clause that Georgia counsel have been called upon in this case to uphold. This Redman form was used as the "subcontract agreement" made by Redman with

the Piedmont Heating & Air Conditioning, Inc., hereinafter referred to as "Piedmont." This contract was made June 30, 1971. About two months later and before performance, Redman, without cause or notice, cancelled and repudiated the contract. Redman thereafter entered into an identical "subcontract agreement" with another concern for the same heating and air conditioning work.

In the two month interval before being notified of Redman's unilateral cancellation Piedmont executed purchase orders for the equipment needed to fulfill its contract and commenced other activities.

Prior to receipt of notice of cancellation Piedmont had billed Redman for $1,138 for work done outside the contract concerning which there is no contest.

The complaint sought recovery of this sum of $1,138 plus $54,191.80 "for loss of profits on said contract" along with attorneys' fees and punitive damages. The latter two items were stricken by the trial court. At the conclusion of a three-day trial the trial judge directed the jury to return a verdict for Piedmont for some amount "which may be anything from $1,138 to $54,191.80, which is the maximum sued for." (R. 457) The jury returned a verdict for the maximum after which Redman filed a motion for new trial on general grounds subsequently amended together with a motion for judgment notwithstanding the verdict. This appeal is from the trial court's judgment overruling the new trial motion and denying the motion for judgment n. o. v. *Held:*

1. We deal first with the contention that "the contract sued upon, by its very terms and provisions, eliminates the possibility of a claim for damages by the subcontractor [Piedmont] against the general contractor [Redman]" which is based upon this language in paragraph six of the agreement: "Subcontractor shall not be entitled to claim or recover

damages or losses of profits from contractor under any circumstances" and the last sentence of paragraph 9 wherein it is stated that "no order of the contractor, irrespective of the nature or effect thereof, shall constitute a breach or abandonment of this contract . . ."

Redman's Georgia counsel argues that these provisions in the contract prepared by nonresident lawyers should be upheld. We disagree. In doing so we adopt as being appropriate for use as our opinion, the contentions as stated in the following portions of Piedmont's brief:

"Appellant contends that Piedmont had no right to recover since paragraph 6 of the contract provides 'subcontractor shall not be entitled to claim or recover damages or loss of profits from the contractor under any circumstances,' and the last sentence of paragraph 9 of the contract provides 'no order of contractor, irrespective of the nature or effect thereof, shall constitute a breach or abandonment of this subcontract . . .' Appellant states that the quoted language constitutes a covenant not to sue, and that this is equivalent to a release. The contract was prepared by Redman's attorney (T. 38), it's Redman's standard form of contract (T. 37), after cancelling this contract Redman used the same form with its other subcontractors (T. 38), Redman continues to use this contract form (T. 405), the same contract form was used by Redman with the J. R. Hobbs Company, the subcontractor who took over this job (T. 45), Redman expected Piedmont to perform the work under the contract and Redman expected to pay $263,000 for the job (T. 41). After execution of the contract Piedmont started its fabrication and ordered equipment for the job and proceeded with its work under the contract as described (T. 89, 90). If a contract is so framed as to be susceptible of two constructions, that interpretation which is least favorable to the author should generally

be accepted. See Bridges v. Home Guano Co., 33 Ga. App. 305. That case went on to state on page 309: 'The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover the true intent of the parties, and in doing this we are to take the whole of [the instrument] together, and to consider this with the surrounding circumstances. [Shorter v. Methvin, 52 Ga. 225 (1), 230.] The rules of grammatical construction usually govern, but even these may be disregarded in order to effectuate the intention. So, also, sentences and words may be transposed, and conjunctions substituted for each other.' Also see Ga. Code § 20-702 which provides that the cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction. The construction which will uphold the contract in whole and in every part is to be preferred, and the whole contract is to be looked to in arriving at the construction of any part. Ga. Code § 20-704 (4). Also see Millwood and Cole Co. v. Flint River Cypress Co., 16 Ga. App. 636, 637; Mutual Life Insurance Co. v. Durden, 9 Ga. App. 797; and Good Roads Machinery Co. v. Neal, 21 Ga. App. 160, which hold that when it is possible to do so without contravening any rule of law, the courts will construe a contract as binding on both the parties, where, from the language of the contract, the conduct of the parties and all the attendant circumstances, it appears that the intention of the parties was both shall be bound, and substantial justice requires that the contract be given effect.

"In this case we respectfully submit that it is clear that the language in paragraph 6 of the contract to the

effect that the subcontractor shall not be entitled to recover damages or loss of profits from the contractor under any circumstances relates to the preceding sentence in the same subparagraph 6 (d). Sub-paragraph 6 (d) reads, 'If contractor shall delay subcontractor in any way, then it shall owe subcontractor therefor only an extension of time for completion equal to the period of delay. Subcontractor shall not be entitled to claim or recover damages or loss of profits from contractor under any circumstances.' The language quoted by appellant applies to any delay by the contractor and is not a blanket release or covenant not to sue as contended by appellant. If this were intended it would have been inserted as a separate paragraph or subparagraph. If the language isn't clear, then the construction least favorable to the appellant would be accepted."

2. We also disagree with the contention made by Redman that the evidence of damages to Piedmont was so remote and speculative and lacking in exactness as to fail to support a claim for damages. The trial transcript shows that the trial judge regarded as the controlling precedent the case of *Luckie v. Max Wright, Inc.,* 90 Ga. App. 243 (82 SE2d 660). Headnote 3 covered the legal problems of damages so well that we hold the trial court was correct in following it. This headnote reads as follows: "Where a contract is entered into by the terms of which the plaintiff undertakes to furnish labor and materials for the improvement of certain real estate in accordance with the terms and conditions of such contract, but the defendant renounces the contract by breaching it before the plaintiff has incurred any expense toward its performance, the measure of recovery for the breach of the contract is the difference between the contract price and the cost to the contractor in labor and materials to have performed the contract. The jury may find any amount

which is authorized by the evidence up to the amount sued for, as the proper measure of damages."

3. We cannot agree with Redman's remaining contention that the verdict was illegal in that there was an erroneous application of the applicable law of damages. "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Code § 20-1407. That measure for computing damages likewise applies to an anticipatory breach where the doctrine of contractual compensatory damages seeks as its goal to make the injured party whole. As is quoted from 17 C. J. 847 with approval in *Georgia Power &c. Co. v. Fruit Growers Express Co.,* 55 Ga. App. 520, 527 (190 SE 669), "The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured, is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed." Also see *Herrman v. Conway,* 83 Ga. App. 888 (65 SE2d 41); *Robertson v. Gore,* 115 Ga. App. 537, 538 (154 SE2d 748) and *Murray v. Americare-Medical Designs, Inc.,* 123 Ga. App. 557 (181 SE2d 871).

*Judgment affirmed. Hall, P. J., and Evans, J., concur.*

ARGUED JANUARY 5, 1973 — DECIDED FEBRUARY 5, 1973 — REHEARING DENIED MARCH 8, 1973 — ▌

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, William G. Grant, Ralph H. Hicks,* for appellant.

*Shoob, McLain & Jessee, Marvin H. Shoob,* for appellee.