The HINESVILLE BANK,
Plaintiff–Appellee,

v.

PONY EXPRESS COURIER CORP.,
Defendant–Appellant.

No. 88–8366.

United States Court of Appeals,
Eleventh Circuit.

March 30, 1989.

Stephen Harris, Savannah, Ga., John F. Pendergast, Jr., Atlanta, Ga., for defendant-appellant.

G. Brinson Williams, Jones, Osteen, Jones & Arnold, J. Noel Osteen, Hinesville, Ga., for plaintiff-appellee.

Before JOHNSON, HATCHETT and COX, Circuit Judges.

HATCHETT, Circuit Judge:

■ In this diversity case, we apply the law of Georgia to affirm the district court's ruling that a common carrier is liable for the full amount one of its customer's lost because of the negligence of the common carrier.

### FACTS

Pony Express Courier Corporation (Pony Express) provides courier services for banks and other financial institutions to transport non-negotiable documents inexpensively. Prior to the advent of ground courier services, banks and financial institutions shipped non-negotiable documents by mail or armored car service.

Pony Express provided ground courier services for the Hinesville Bank at Hinesville, Georgia. Pony Express computed the cost of the service on a weight-based fee. The arrangement between Pony Express and the Hinesville Bank required that Pony Express pick up a courier bag containing the bank's "cash letter" and related materials (cash letter) for next day delivery to the Citizens and Southern National Bank (C & S) in Atlanta, Georgia.[1]

On September 19, 1986, the Hinesville Bank prepared its $767,425.93 cash letter bag for shipment. Pony Express picked up the cash letter, signed the waybill, and left a copy for the Hinesville Bank; but, Pony Express lost the cash letter bag before it reached the C & S Bank in Atlanta.

The Hinesville Bank maintained records to reconstruct cash letters if a cash letter was lost in transit or otherwise unavailable for redemption.[2] The Hinesville Bank used a microfilm camera to photograph each instrument comprising the cash letter before releasing it for shipment. On September 19, 1986, however, the microfilm proved to be indecipherable. In the absence of decipherable microfilm, the Hinesville Bank reviewed deposit receipts and contacted customers to inquire about the origins of checks that had been credited to their accounts. The Hinesville Bank asked its customers to tender duplicate instruments when it was able to identify the drafters. Although the Hinesville Bank reconstructed and recovered a significant portion of the lost instruments, it failed to recover

---

1. The "cash letter" is a single document which summarizes, or totals, the face amounts of checks and credit card receipts (instruments) which a bank or financial institution has received over the course of a business day. The instruments are credited to the appropriate account as they are deposited. The instruments are later processed through computers which abstract the amount of the transaction and assign a sequence number to them. The identity of the parties who drafted the instruments and the institutions upon which they are drafted are not recorded. When these procedures have been completed, the instruments are collected into bundles, which are packaged for transfer.

2. This process is commonly known in the financial and banking industry as reconstruction, which denotes the ability to identify: the bank upon which the check is drawn; the identity of the person submitting the check for payment; and the amount of the draft. Reconstruction is understood by both the banking and the ground courier industries to be an essential part of their arrangement and constitutes an established custom and usage.

items with a total value of $302,669.31.[3]

## PROCEDURAL HISTORY

On September 10, 1987, the Hinesville Bank filed this diversity action against Pony Express, a Delaware corporation, to recover the value of the lost instruments, expenses associated with reconstruction, and lost interest, which totalled $335,-219.45. Pony Express filed its answer and denied liability. The parties entered a consolidated pretrial order, and the Hinesville Bank filed a motion to strike and/or for summary judgment. On March 24, 1988, the district court granted summary judgment to the Hinesville Bank on liability and damages, but denied attorney's fees.

On April 1, 1988, Pony Express filed a motion to alter or amend judgment based, in part, upon the Hinesville Bank's failure to provide competent evidence in support of its damages. The district court granted Pony Express's motion, deleted that portion of its prior order which addressed the amount of damages, and directed the Hinesville Bank to submit evidence supporting the exact sums claimed. The Hinesville Bank filed its response to the court's order, and Pony Express filed its objections. On May 2, 1988, the district court entered judgment awarding damages in the amount of $335,219.45.

## CONTENTIONS

Pony Express contends that the district court erred in granting summary judgment to the Hinesville Bank on the issues of liability and damages because several issues of material fact remain for evaluation by a jury. First, Pony Express argues that genuine issues of material fact exist as to whether the Hinesville Bank's failure to maintain adequate and proper reconstruction capabilities constituted a breach of their oral contract. Second, it argues that a question of material fact remains concerning the effect of the waybill. Third, it contends that several questions of material fact remain concerning the exact amount of damages the bank is entitled to recover.

## ISSUES

We address the following issues:

(1) whether the Hinesville Bank breached an oral contract with Pony Express by failing to maintain adequate and proper reconstruction capabilities;

(2) whether the Hinesville Bank's acceptance and use of preprinted waybills precludes or limits the award of damages;

(3) whether the district court erred in granting summary judgment in favor of the Hinesville Bank for the face amount of the non-reconstructed items of the cash letter; and

(4) whether the district court erred in granting summary judgment in favor of the Hinesville Bank for the bank's reconstruction expenses.

## DISCUSSION

### I. Standard of Review

Pony Express contends that the district court erred in granting summary judgment to the Hinesville Bank on the issue of liability and in its award of damages. We must independently review the district court's order granting summary judgment and determine whether any genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Mercantile Bank and Trust v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985). We apply the same legal standards that control the district court's determination when examining a decision granting summary judgment. *Mercantile Bank and Trust v. Fidelity and Deposit Co.*, at 841. A party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact in the case. *Mercantile Bank and Trust v. Fidelity and Deposit Co.*, at 841;

---

**3.** The Hinesville Bank failed to reconstruct the transactions of commercial customers who deposited large numbers of checks without retaining records of their origins. In these circumstances, the bank incurred losses because the customers' accounts had been credited and the Hinesville Bank was unable to collect the amount of those credits from the drafters' banks. The untraceable instruments had a total value of $302,669.31.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In determining whether a movant has met this burden, we review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Mercantile Bank and Trust v. Fidelity and Deposit Co.*, at 841; *Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608. All reasonable doubts about the facts are resolved in favor of the nonmovant. *Mercantile Bank and Trust v. Fidelity and Deposit Co.*, at 841. If reasonable minds might differ on the inferences arising from undisputed facts, then we should deny summary judgment. *Mercantile Bank and Trust v. Fidelity and Deposit Co.*, at 841.

## II. Liability

Pony Express contends that the Hinesville Bank breached their oral contract through its failure to maintain adequate and proper reconstruction capabilities. The oral contract provided that Pony Express would serve as the Hinesville Bank's ground carrier in the transportation of non-negotiable instruments based upon the bank's representation that it would maintain adequate means of reconstruction. Pony Express relies on the affidavit of its Southeastern Manager, Steve Devine, to argue that the bank was required, as a condition precedent to its oral contract with Pony Express, to establish and maintain adequate records sufficient to reconstruct the cash letter in the event of its loss during transit. Pony Express cites O.C.G.A. § 13-3-4 to argue that the bank failed to fulfill its condition precedent of maintaining adequate reconstruction capability.[4]

Pony Express contends that the bank's acceptance and use of the preprinted waybills, which expressly limit its liability to $50, precludes an award of damages in excess of that amount. Pony Express notes that the waybills set forth in clear terms:

UNLESS A GREATER VALUE IS DECLARED HEREIN THE SHIPPER AGREES AND DECLARES THAT THE VALUE OF THE PROPERTY IS RELEASED TO AN AMOUNT NOT EXCEEDING $50 (DOLLARS) FOR ANY SHIPMENT.

Pony Express argues that the evidence in the record reflecting the parties' custom and usage with regard to the waybill and manner of shipments clearly proves that the bank knew of and accepted the waybill's terms and conditions.

The Hinesville Bank argues that no genuine issues of material fact existed in regard to Pony Express's liability. The bank argues that the district court addressed Pony Express's defenses relating to liability in detail.[5]

The Hinesville Bank argues that the only issue properly before this court relates to the existence of an express contract between the parties. Although "[a]n express contract is one where the intention of the parties and the terms of the agreement are declared or expressed by the parties, in writing or orally, at the time it is entered into," the Hinesville Bank argues that no evidence exists of an express agreement. *Thomas v. Lomax*, 82 Ga.App. 592, 61 S.E.2d 790, 791 (1950). The Hinesville Bank also argues that the waybill relating to the shipment at issue, as a matter of law, cannot serve to limit Pony Express's

---

4. O.C.G.A. § 13-3-4. Effect of Conditions precedent or subsequent upon rights of parties under contracts.

Conditions may be precedent or subsequent. A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party. The breach of a condition subsequent may destroy the party's rights under the contract or may give a right to damages to the other party, according to a true construction of the intention of the parties.

5. Pony Express argued that its liability was limited by the terms of its tariff on file with the Georgia Public Service Commission (PSC) in the district court. The district court held that the tariff's liability limitation was invalid under O.C.G.A. § 46-9-2, absent an express contract limiting liability. Also, on December 29, 1986, the PSC issued an order ruling that the tariff relied upon by Pony Express was illegal. Pony Express did not argue the validity of the PSC tariff on appeal.

liability. O.C.G.A. § 46–9–2.[6]

The Hinesville Bank emphasizes that Pony Express is a common carrier subject to strict statutory regulation.[7] Its attempt to escape liability by alleging a breach of an oral contract fails as a matter of law because it was not presented in the district court. The Hinesville Bank stresses that a common carrier is allowed no defense whatever to limit its liability absent a prior affirmative showing that its negligence played no role in the bank's loss. O.C.G.A. § 46–9–3.[8] The Hinesville Bank contends that Pony Express's arguments are at odds with O.C.G.A. §§ 46–9–2 and 46–9–3.

■ In sum, Pony Express argues that an express agreement existed with the Hinesville Bank by virtue of: an oral contract containing a condition precedent, the printed waybill limitation, and the Hinesville Bank's custom and usage of accepting the waybill. First, Pony Express did not argue that an express contract existed by virtue of an oral contract containing a condition precedent in district court. Arguments raised for the first time on appeal are not proper for consideration by this court. *See Cotton v. U.S. Pipe & Foundry Co.*, 856 F.2d 158, 162 (11th Cir.1988). Second, the district court correctly held that under O.C.G.A. § 46–9–2 a waybill cannot serve to limit Pony Express's liability. Finally, the district court held that a well-established custom and usage between the parties cannot rise to the level of an express contract under Georgia law. Pony Express produced no evidence of any ex-

plicit language expressed by the parties which would serve as evidence of an express contract under Georgia law. Accordingly, we affirm the district court's grant of summary judgment in favor of the Hinesville Bank in regard to Pony Express's liability for the loss of the cash letter.

### III. Damages

■ Pony Express contends that the district court's award of damages based upon the face value of the non-reconstructed items was erroneous. Assuming that it is liable to the bank for damages arising out of the cash letter loss, Pony Express argues that the proper calculation of any such damages is the reasonable cost of reconstructing the cash letter. Pony Express argues that the award of damages by computing the face amount of non-reconstructed items of the cash letter was incorrect as a matter of law because neither the bank nor Pony Express ever contemplated those damages.

As Pony Express views the issue, the recovery of any amount of damages in excess of the reasonable cost of reconstruction constitutes remote or consequential damages that were not contemplated by the parties at the time the parties agreed to their ground courier services contract; O.C.G.A. § 13–6–8 clearly requires remote or consequential damages to be within the contemplation of the parties as a probable result of a contractual breach,[9] therefore,

---

6. O.C.G.A.. § 46–9–2. Power of common carrier to limit liability.

   A common carrier may not limit his legal liability by any notice given either by publication or by entry on receipts given or tickets sold, provided that a common carrier may limit his liability by means of an express contract[.]

7. *See* O.C.G.A. § 46–9–1. Standard of care for carriers and common carriers; presumption of negligence by common carriers arising from loss of goods.

   Carriers as such are bound to exercise ordinary diligence. Common carriers as such are bound to use extraordinary diligence, and in cases of loss the presumption of law is against them, and no excuse avails them unless the loss was occasioned by the act of God or the public enemies of the state.

8. O.C.G.A. § 49–9–3. Showings required by common carrier as prerequisite to use of exceptions under Code Sections 46–9–1 and 46–9–2.

   In order for a common carrier to avail himself of the act of God exception under Code Section 46–9–1 or the contractual exception under Code Section 46–9–2, he must establish not only that the act of God or the contractually excepted fact ultimately occasioned the loss but that his own negligence did not contribute thereto.

9. O.C.G.A. 13–6–8. Damages and expenses recoverable—Remote or consequential damages.

   Remote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are

the district court's award of consequential damages was erroneous. *See Quigley v. Jones*, 255 Ga. 33, 334 S.E.2d 664, 665 (1985).

It was the bank's duty under the terms of the oral contract to maintain adequate and proper reconstruction capabilities. Because the bank did not do so, Pony Express argues that the cash letter consisted of non-negotiable materials that were of no value to third parties which limits the measure of damages for the loss of the cash letter to the reasonable cost of its reconstruction. Citing O.C.G.A. § 13–6–2, Pony Express also argues that the damages contemplated by the parties when the contract was made as a result of a cash letter loss would, at the greatest, be the reasonable cost of reconstruction; the injured party cannot be placed in a better position than it would have held had the breach not occurred.[10] *See Redman Development Corp. v. Piedmont Heating and Air Conditioning, Inc.*, 128 Ga.App. 447, 197 S.E. 2d 167, 170–71 (1973).

Pony Express also urges that the bank failed to mitigate its damages. O.C.G.A. § 13–6–5 requires a party to mitigate its damages, and the Hinesville Bank failed to do so by failing to maintain adequate and proper reconstruction capabilities.[11] The existence of mitigation, the bank's duty to reconstruct the cash letter, and the reasonable estimation of reconstruction costs are issues of fact for a jury. *See Considine Company of Georgia, Inc. v. Turner Communications Corp.*, 155 Ga.App. 911, 273 S.E.2d 652, 655 (1980).

The Hinesville Bank counters that, as a matter of law in Georgia, a common carrier cannot rely on the fault of a shipper without first affirmatively demonstrating a lack of any contributing negligence on its own part. O.C.G.A. § 46–9–3. Pony Express has not made, nor attempted to make, any such showing.

#### A. *Reconstruction Labor Expenses*

The district court awarded the bank $7,535.81 in labor expenses incurred as the result of its reconstruction efforts. The reconstruction labor charges were for services rendered by the bank's regular employees during normal business hours. Because the award of $7,535.81 was for regular payroll expenses, Pony Express argues that this award placed the bank in a better position that it would have occupied had no breach occurred. *See Redman Development Corp. v. Piedmont Heating and Air Conditioning, Inc.*, 197 S.E.2d at 170–71.

#### B. *Telephone and Postage Expenses*

The court awarded $1,890 in telephone expenses and $154 in postage expenses. Pony Express contends that the bank's claims for telephone and postage expenses were estimated and that a claim for damages cannot be based upon speculation, conjecture, or guesswork. *Hospital Authority of Charlton County v. Bryant*, 157 Ga.App. 330, 277 S.E.2d 322, 324 (1981). Pony Express contends that the bank failed to produce the requisite proof of the claimed damages because the receipts, checks, and vouchers were accessible, and the best evidence to the expense sought to be recovered. O.C.G.A. § 24–5–4; *Consolidated Engineering Co. of Georgia, Inc. v. U.I.R. Contractors, Inc.*, 136 Ga.App. 923, 222 S.E.2d 692, 693 (1975).

The district found no evidence that the Hinesville Bank failed in its duty to mitigate its damages. The district court determined that the Hinesville Bank supported its damage claim of $302,669.31 for the lost

---

10. O.C.G.A. 13–6–2. Measure of damages—Generally.
Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract.

breach and such as the parties contemplated, when the contract was made, as the probable result of its breach.

11. O.C.G.A. 13–6–5. Duty of injured party to lessen damages resulting from breach.
Where by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence.

cash letter, its lost interest claim of $22,-970.00, its damage claims for labor expenses in the amount of $7,535.81, its telephone expenses in the amount of $1,890, and its postage expenses of $154. Pony Express failed to submit evidence to support its argument that the Hinesville Bank's claims were invalid. Accordingly, we affirm the district court's grant of summary judgment for the Hinesville Bank and against Pony Express in the amount of $335,219.45.

## CONCLUSION

In summary, we affirm the district court's award of summary judgment in favor of the Hinesville Bank and against Pony Express on the issue of liability and the award of $335,219.45 in damages.

AFFIRMED.

JOHNSON, Circuit Judge, specially concurring:

I write separately to note an alternative basis for our holding that the bank's damages are not limited to the cost of reconstructing the cash letter. Pony Express' argument concerning limitations on its liability is primarily based on the existence of an oral contract. A review of the discovery conducted in this case reveals the following:

Plaintiff's Request to Admit No. 5.

Admit that The Hinesville Bank has not entered into any oral agreement with Defendant which would limit Defendant's duty or liability with respect to the cash letter which was picked up by Defendant's agent (J. Hook) on September 29, 1986.

RESPONSE: Defendant does not comprehend the specific meaning of Request No. 5. Defendant relies on the terms and conditions of its Tariff as agreed to by Plaintiff when Plaintiff prepared the said Waybill No. 3054143; and other than that, *Defendant is not aware of any oral agreement that would in any way change, alter or amend the Tariff.*

(emphasis added). I would hold that Pony Express is foreclosed from arguing that any oral agreement limited its liability.

*See* Fed.R.Civ.P. 36(b) ("Any matter admitted under this rule is conclusively established"); *999 v. C.I.T. Corp.*, 776 F.2d 866, 869–70 (9th Cir.1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded.").