**REAL ESTATE FINANCING,
Plaintiff–Appellant,**

v.

**RESOLUTION TRUST CORPORATION; Investment Group Mortgage Corporation; Union Planters Investment Bankers Group, Inc.; Defendants–Appellees.**

**No. 90–7880
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1992.

Rehearing Denied Feb. 27, 1992.

---

**13.** 21 B.R. 199 (Bankr.S.D.Cal.1982).

**14.** 12 B.R. 479 (Bankr.D.Nev.1981).

Jesse M. Williams, III, Dennis R. Bailey, Montgomery, Ala., for plaintiff-appellant.

Richard H. Gill, Copeland, Franco, Screws & Gill, P.A., Montgomery, Ala., for Union Planters.

Robert L. Crawford, Thomas J. Walsh, Jr., McDonnell Boyd, Memphis, Tenn., for Investment Group Mortg. Corp. & Union Planters.

Betsy P. Collins, Spain, Gillon, Grooms, Blan & Nettles, Birmingham, Ala., for Resolution Trust Corp.

Before KRAVITCH, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

This diversity case involves a commercial transaction—specifically, a sale of mort-

gages. The seller, First Guaranty Mortgage Corporation ("First Guaranty"), a wholly owned subsidiary of Resolution Trust Corporation as receiver for First Guaranty Bank for Savings ("Bank") (collectively, "seller"), promoted a mortgage servicing offering through a reputable broker, Investment Group Mortgage Company ("Investment Group"), an affiliate of Union Planters Investment Bankers Group, Inc. ("Union Planters") (collectively, "broker"). The broker's offering contained an important error: it described the fees a buyer could expect to receive from servicing the mortgages as "net" of the fees the buyer must pay to insure the mortgages, when in fact the expected servicing fees listed in the offering were "gross" figures. In other words, a party relying upon the information in the offering would mistakenly believe that it could make more money servicing the mortgages than it actually would.

The eventual buyer of the mortgages, Real Estate Financing, Inc. ("REF" or "buyer"), belatedly discovered the error after signing a sales contract. The buyer then sued the seller and the broker for fraud under Alabama law. The United States District Court for the Middle District of Alabama granted summary judgment in favor of all the defendants. Our independent review of the district court's decision discloses no error in the dismissal of REF's intentional fraud count. However, largely because of recent changes in Alabama's law of fraud, we do find error in the district court's dismissal of the fraud counts which do not require intent to deceive. Therefore, we AFFIRM in part, REVERSE in part, and REMAND the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. *The Relevant Facts*

In early December 1988, Investment Group distributed the mortgage servicing offering on behalf of First Guaranty and the Bank. Joe Wilson, an executive vice-president of REF with six years of experience in buying and selling mortgage portfolios, received the offering and elected to bid on the mortgages. Using a computer program to analyze the relevant data (including the erroneous information on the expected servicing fees), Wilson determined that his company should bid 2.3% of the outstanding balance of the mortgages. Wilson then called Union Planters and was told that his 2.3% bid was "in the ballpark." R1–14–8.

By letter to Investment Group, Wilson submitted the 2.3% bid in mid-December, specifically qualifying it by stating that it was subject to REF's verification of the information in the offering and REF's due diligence review prior to signing any sales contract. Wilson's conditions were reasonable, as it is common in this industry for buyers of mortgages to check all figures before entering into any contractual relationships. To verify the information, REF requested and received Forms 2010 for each of the mortgage pools it wanted to buy. These forms contained accurate information about the mortgages offered by the seller, including the expected gross servicing fee and the required insurance guaranty fee for each mortgage pool.

A mathematical analysis of the Forms 2010 would have alerted REF to the fact that the offering mischaracterized the expected servicing fees as net figures and not gross figures. Despite REF's express indication that it would diligently review the relevant data and despite possessing the time, information, and business acumen to perform the necessary calculations, REF's "verification" failed to discover the error. REF admittedly did not do its homework before it purchased the mortgages. Not until many months later did REF discover the mistake and sue the seller and the broker for fraud.

### B. *The Proceedings Below*

REF filed its complaint in November 1989. The complaint asserted three counts under Alabama law: (1) willful deception, (2) reckless misrepresentation, and (3) innocent misrepresentation. The defendants filed motions to dismiss, which were treated by the district court as motions for summary judgment. The parties briefed

the motions and submitted affidavits and other evidence to the district court. After hearing oral argument on the motions, the district court granted summary judgment in favor of the seller and the broker on February 26, 1990.

The district court's decision primarily rested on two grounds. First, the court believed that there was no evidence tending to show that either the seller or the broker intentionally deceived REF, an essential element of willful deception. Second, the court concluded that there was no genuine dispute regarding REF's justifiable reliance upon the figures in the mortgage servicing offering, also a requisite element for finding fraud under Alabama law. Therefore, the district court granted summary judgment in favor of the seller and the broker. After REF's motion to amend its complaint to add different claims was denied by the district court, REF appealed.

## II. DISCUSSION

### A. *The Standards Governing Summary Judgment*

 A district court must grant summary judgment if the moving party shows that there is no genuine dispute regarding any material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). One way to seek an award of summary judgment is for the moving party to demonstrate that an essential element of the non-movant's case is lacking. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. After such a showing, unless the non-moving party offers proof sufficient to establish the existence of the essential element, the district court must grant summary judgment to the moving party. *Id.* at 322–23, 106 S.Ct. at 2552. Because our review of a district court's summary judgment decision is *de novo*, we independently review the record, following the same standards that guide a district court. *See, e.g., Hinesville Bank v. Pony Express Courier Corp.*, 868 F.2d 1532, 1534 (11th Cir.1989).

### B. *Willful Deception*

 Under Alabama law, an essential element of willful deception is "[k]nowledge of the falsehood with intent to deceive...." *Kaye v. Pawnee Constr. Co.*, 680 F.2d 1360, 1369 (11th Cir.1982) (interpreting Alabama law). REF's argument for intentional deception rests upon the following scenario. Either First Guaranty or Investment Group intentionally described gross figures as net figures in the offering, hoping to entice a buyer to bid substantially higher for the mortgages. The offering was then distributed to many sophisticated business entities, even though all were very capable of discovering the fraud, in order to attract many inflated bids. When the highest bidder was ascertained, the seller and the broker would provide that party with accurate information about the mortgages (Forms 2010). The villains would then hope that this bidder would not perform the simple arithmetic which would defeat the scheme, despite knowing that it is standard industry practice for mortgage buyers to check all figures diligently. Such a scenario is perhaps conceivable, but not very plausible. Under such circumstances, a party alleging intentional fraud would need solid proof to withstand summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Goldberg v. Household Bank, F.S.B.*, 890 F.2d 965, 967 (7th Cir.1989).

Not only did the district court fail to find *persuasive evidence* to support REF's allegations of intentional fraud, it failed to find *any evidence* to support those allegations. Our independent review of the record also fails to disclose any evidence which would indicate that either the seller or the broker intentionally misrepresented the mortgage servicing fees in order to deceive REF. In fact, all of the evidence negates such a finding. Statements by the defendants uniformly characterize the error as honest and innocent. The defendants willingly admitted the mistake soon after Wilson told them of the error. Moreover, the internal projections of the broker, calculated to judge the adequacy of the bids, utilized the same erroneous information which Wilson

plugged into his computer program. There is no genuine dispute about material facts here. The defendants made an error, but did not engage in willful fraud in order to deceive REF. Because "the record taken as a whole could not lead a rational trier of fact to find for [REF]," the district court correctly granted summary judgment in favor of the defendants on REF's willful deception count. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## C. *Reckless And Innocent Misrepresentation*

■ The fact that a deceptive statement was not made intentionally does not mean it is not fraud. Under Alabama law, one can defraud even without an intent to deceive. *See First Ala. Bank v. First State Ins. Co.,* 899 F.2d 1045, 1056 (11th Cir. 1990) (reviewing Alabama law). Therefore, REF's reckless and innocent misrepresentation counts survive unless those counts are defeated on another ground. Below, the district court granted summary judgment against REF on these counts because it found, as a matter of law, that REF had not justifiably relied upon the statements made by First Guaranty and Investment Group. We find error in this conclusion by the district court.

It is true enough that "justifiable reliance" is an essential element of a plaintiff's fraud claim in Alabama. *See, e.g., Army Aviation Ctr. Fed. Credit Union v. Poston,* 460 So.2d 139, 142–43 (Ala.1984). But what does that mean? Prior to March 1989, a party claiming deception had not justifiably relied upon representations unless that party took reasonable steps to ascertain the veracity of the statements. *See, e.g., Torres v. State Farm Fire & Casualty Co.,* 438 So.2d 757, 758–59 (Ala. 1983). Chief Justice Hornsby of the Alabama Supreme Court cast considerable doubt on this construction of justifiable reliance in his special concurrence in *Southern States Ford, Inc. v. Proctor,* 541 So.2d 1081 (Ala.1989). The Chief Justice wrote:

"Reliance" should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, under-

standing, and present ability to fully understand the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth."

*Id.* at 1091–92 (Hornsby, C.J., concurring) (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 108, at 750 (5th ed. 1984)). Chief Justice Hornsby's sentiments, and the corresponding change in Alabama fraud law, commanded a majority of the Alabama Supreme Court a short time later. *Hickox v. Stover,* 551 So.2d 259, 263 (Ala.1989) (per curiam).

The parties, as well as the district court below, had the benefit of both *Southern States* and *Hickox.* However, there was some confusion about whether or not the new standard governing justifiable reliance applied to all types of fraud cases. After all, *Southern States* involved a basic *consumer* transaction particularly ill-suited to a caveat emptor rule—buying a car from a zealous car salesman. In *commercial* transactions between sophisticated business entities, placing some discovery burden upon the party alleging deception in order to induce that party to protect itself seems more reasonable. *See, e.g., Southern States,* 541 So.2d at 1090 (Hornsby, C.J., concurring). In commercial contracts, the pervasive concerns of consumer protection law—that trusting and gullible individuals will be swindled into purchasing junk used cars, dangerous old homes, or inadequate insurance protection—are largely absent.

The briefs of the parties to this appeal reflect this confusion. On the one hand, REF urges that reliance is only unjustifiable if the statements relied upon were patently ludicrous, regardless of the nature of the transaction. On the other hand, the defendants cite many pre-*Southern States* cases in arguing that reliance cannot be justified if the deceived party is a business which failed to take the precautionary steps common to the industry.

Although reciting the standard announced in *Southern States*,[1] the district court clearly sided with the defendants. In granting the defendants summary judgment because REF had not established justifiable reliance upon the figures in the mortgage servicing offering, the district court focused on the failure of Wilson and REF to verify the data. The court found the failure to verify particularly troubling because REF was a sophisticated company and Wilson was an experienced buyer of mortgages. Recognizing that due diligence is common practice in the industry, the court concluded that REF's reliance was completely unjustified: Wilson told Investment Group that he was going to check the numbers in the offering, and he had all the information he needed to perform the simple calculations. Therefore, the district court ruled that REF's reliance was unjustified as a matter of law.

■ Had the district court had the benefit of the most recent Alabama Supreme Court pronouncements on the subject of justifiable reliance, we are confident that it would have reached a different conclusion. An analysis of these recent opinions makes it clear that the district court misapplied Alabama law. In *Johnson v. State Farm Insurance Co.*, 587 So.2d 974 (Ala.1991), the Alabama Supreme Court ended the confusion about the applicability of *Southern States* to commercial transactions:

> For the edification of the bench and bar, we reiterate that the "justifiable reliance" standard, first proposed as a standard for consumer fraud transactions in Chief Justice Hornsby's special concurrence in *Southern States* ..., is the standard by which to test the "reliance" element in *both consumer and commercial fraud transactions*.

*Johnson*, 587 So.2d at 979 (emphasis added). Therefore, under the new Alabama law, regardless of the nature of the transaction, a party relying upon another's

statement has no duty to investigate the accuracy of that statement else lose a claim for fraud. A second recent case adds the requisite clarity:

> This Court has abandoned the requirement of "reasonable reliance," whereby a party making a false statement prevailed whenever the person defrauded did not investigate the statement in order to discover the fraud.
>
> The present standard of "justifiable reliance" requires the party making a representation to refrain from dishonest, untrue, or recklessly inaccurate or untrue statements.... Whereas the old standard of reasonable reliance placed a burden on the party to whom a representation was made—the burden of discerning the truthfulness of a statement—the new standard of justifiable reliance places a burden on the party making the statement—the burden of knowing the truthfulness of a statement.
>
> This approach continues the move away from the doctrine of "caveat emptor" to the modern perspective that parties to transactions should be able to rely on representations that are not obviously false. Instead of "let the buyer beware," the standard is becoming "let the liar beware."

*Harris v. M & S Toyota, Inc.*, 575 So.2d 74, 77–78 (Ala.1991).

■ Thus, REF's reliance upon the figures in the mortgage servicing offering was unjustifiable only if those figures would be obviously or patently false to anyone in the industry. *Id.* at 77; *Hickox*, 551 So.2d at 263; *Southern States*, 541 So.2d at 1090, 1092 (Hornsby, C.J., concurring). The evidence regarding what REF or Wilson could (or should) have done to discover the error is simply not pertinent to that question. Instead of focusing on the conduct of REF and Wilson, the district

---

1. The district court judge apparently believed that a party "closes its eyes to the truth" whenever it fails to investigate the veracity of any representation. This strays from the *Southern States* principle that only a party which believes a *patently false statement* "closes its eyes to the truth." It is contrary to *Southern States* to assert that a party also "closes its eyes to the truth" anytime it fails to investigate a *facially believable statement. See Southern States*, 541 So.2d at 1091–92 (Hornsby, C.J., concurring).

court should have focused upon the content of the representations.

On *that* question, REF has presented enough evidence to avoid summary judgment. The record fairly shows that although the figures in the offering indicated a high expectation of servicing fees, the amount of those fees was not implausible or ridiculously high—even to someone well-trained in the industry. Indeed, that the figures in the offering were in the realm of the possible was indicated by the defendants themselves—in calculating the expected bids on the mortgages, the broker utilized the same erroneous information that misled REF. If the description of gross fees as net fees was patently false, Investment Group or Union Planters would have caught the error. Moreover, Wilson's honest belief in the accuracy of the offering information was further confirmed when he was told by Union Planters that his 2.3% bid was "in the ballpark." That honest belief continued for months after the transaction was completed. When this evidence is considered in the light most favorable to REF, *see Hinesville Bank,* 868 F.2d at 1535, a rational jury could conclude that REF justifiably relied upon the representations in the mortgage servicing offering. Therefore, the district court erred when it granted summary judgment in favor of the defendants on REF's reckless and innocent misrepresentation counts.[2]

### III. CONCLUSION

Admittedly, this case does not involve intentional deception. But neither does it involve a plaintiff who is suing to enforce another's completely unbelievable promise. Accordingly, we AFFIRM the district court's dismissal of REF's intentional fraud count and REVERSE the dismissal of

REF's reckless and innocent misrepresentation counts. A rational decisionmaker could not have found intent to deceive, but justifiable reliance might be found given the most recent pronouncements of the Alabama Supreme Court.[3]

AFFIRMED in part, REVERSED in part, and REMANDED to the district court for further proceedings consistent with this opinion.

---

2. Defendants also argue that REF did not actually rely upon the information in the offering because REF stated it would not rely upon that information. The defendants also indicate that the offering contained a disclaimer which stated that a buyer should not rely upon the information. This argument has no merit. The evidence clearly shows that Wilson and REF relied upon the information in the offering. That is the only reason REF bid 2.3% (and subsequently signed a sales contract at this price).

3. Given our disposition of this case, we need not address REF's appeal of the district court's refusal to allow REF to amend its complaint. However, this court strongly recommends another attempt at amendment. Our independent review of the record indicates that a recision remedy (such as mutual mistake) may be more appropriate than a fraud remedy.