## ENVIRONMENTAL COALITION OF BROWARD COUNTY, INC., Plaintiff-Appellant,

v.

Charles T. MYERS, III, Col. District Engineer, U.S. Army Corp of Engineer, John O. March, Jr., Sec. of the Army, S.A. Horvitz Testamentary Trust, Marcia Beach, Scott Cowan, Howard Craft, Howard Foreman, Nicki Grossman, Edward Kennedy, Gerald Thompson, in their official capacities as Comm. of Broward Cty., Defendants-Appellees.

No. 86–5143.

United States Court of Appeals, Eleventh Circuit.

Nov. 5, 1987.

Edward Lee Rogers, Washington, D.C., for plaintiff-appellant.

Maria A. Iizuka, Appellate Section, Land & Natural Resources Div., Dept. of Justice, Washington, D.C., for U.S.

Gary P. Sams, Hopping, Boyd, Green, & Sams, Frank Mathews, Tallahassee, Fla., David W. Duke, Jr., McCune, Hiaasen, Crum, Ferris & Gardner, Ft. Lauderdale, Fla., for S.A. Horvitz Testamentary Trust.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

RONEY, Chief Judge:

Plaintiff Environmental Coalition of Broward County (the Coalition) appeals the refusal of the district court to enjoin work under a dredge and fill permit issued by the Corps of Engineers (the Corps) to the S.A. Horvitz Testamentary Trust (the Trust). We affirm.

The district court considered the application process, the public interest factors, the plans to go forward with the dredging of the Dania Cut-off Canal, the propriety of requiring no Environmental Impact Statement, and the Corps' consideration of practical alternatives to the applicant's proposal. The district court found that with respect to all these issues, the Corps' determination was well reasoned, fully documented, and completely justified. The district court found no need to go beyond the administrative record to reach these conclusions. *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Save Our Ten Acres v. Kreger*, 472 F.2d 463, 467 (5th Cir.1973).

Such findings of fact made by the district court shall not be set aside unless clearly erroneous, unless the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer*, 470 U.S. 564, 573–75, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985).

## REQUIRED SPECIFICATION OF APPLICATION

The Coalition argues that the description of the activities and structures proposed for the fill, which was supplied to the Corps by the Trust, did not contain enough specificity to provide effective public notice or to

permit adequate analysis of the environmental consequences by the concerned parties or agencies.

The regulations, however, only require general descriptions of the proposed use. Regulations published under Section 404 of the Clean Water Act, 33 U.S.C.A. § 1344, require that, before a dredge and fill permit can be issued, the Corps must be provided with "a complete description of the proposed activity including necessary drawings, sketches or plans sufficient for public notice." 33 C.F.R. 325.1(d). This public notice is primarily intended to advise all interested parties of the proposed activity for which a permit is sought and to make possible an evaluation of the probable impact on the public interest.

The requirements of the public notice are not couched in terms of inordinate specificity, but need only convey "sufficient information to give a clear understanding of the nature and magnitude of the proposed activity to generate meaningful comment." 33 C.F.R. 325.3(a). Blueprints of the entire layout are not required items of information. It is sufficient to include only a "brief description of the proposed activity, its purpose and intended use, ... including a description of the type of structures ... to be erected on fills." 33 C.F.R. 325.-3(a)(5).

Under other regulations, the Corps' district engineer cannot issue a public notice where the application does not comply with the above regulations. He is required to review all applications for completeness, and can only issue a public notice when an application is found to be complete. 33 C.F.R. 325.2(a)(2); 33 C.F.R. 325.3. A decision made by an administrative agency under authority of this kind is due great deference.

The district court was required to determine whether the Corps' decision was reasonably supported by the information before it. This does not require that all of the data support the agency's decision. It is enough that the Corps considered all relevant factors and that there is credible evidence in the record to support its action. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). In its review, a court should give deference to the agency determination. This is particularly appropriate in the case of complex environmental statutes such as the Clean Water Act. *EPA v. National Crushed Stone Association*, 449 U.S. 64, 83–84, 101 S.Ct. 295, 306–07, 66 L.Ed.2d 268 (1980); *see also, National Wildlife Federation v. Marsh*, 721 F.2d 767, 780 (11th Cir.1983). A court should not substitute its own views for the decision reached by the agency. These principles of judicial review are particularly appropriate where the agency decision under review includes a "balancing" process like the "public interest" review provided for by the Corps' regulations. 33 C.F.R. 320.-4(b).

■ Under this standard of review, the Coalition's assertion of insufficient specificity is not borne out by the record. The Trust filed a development plan describing its intended use for the property in question:

> The 221–acre tract north of the DCC [Dania Cut-off Canal] has not otherwise been master planned ... since 1980, but its intended use has been explained in general terms ... to complement and supplement the activities of the Port Everglades Authority in a manner consistent with its industrial zoning classification. It is therefore anticipated that the property will be developed for marine industrial and commercial activities, such as Port-related support facilities and services, ... some degree of container cargo or warehousing ... along with some trucking/distribution activities. These projections are simply educated guesses or examples of specific uses that are representative of the more generic marine industrial/commercial classification given this project. Clearly, market demand and market conditions will have a major impact on the ultimate land uses,

and these variables cannot be evaluated at this point.

Adjacent uses and structures provided sources of reference and information concerning environmental consequences resulting from the type of activity and proposed use under this description. The Coalition has at no time demonstrated how the Corps' consideration of the Trust's permit application was impeded by failure to include additional information.

The district court cannot be faulted in deciding that the description provided, along with the comparison to other developments within the immediate area, was sufficient to justify the determination reached by the Corps of Engineers.

## THE DANIA CUT–OFF CANAL

■ The modified Section 404 permit authorizes the Trust to use material from the Intracoastal Waterway as fill. The Coalition argues that the Corps should have "deauthorized" the dredging of the Dania Cut-Off Canal, because fill from that area would no longer be needed. The argument is premised upon the assertion that the dredging of the Dania Cut-off Canal no longer served the project purpose, because the use of the dredged materials were not needed for fill. In its findings, however, the Corps stated that the dredging of the Dania Cut-off Canal, in addition to providing fill, "would also improve the navigability of the waterway for commercial traffic." Indeed, the Corps concluded that if the Canal were not dredged, "water access to the filled property would remain impaired which could affect navigation safety, [and as] waterbourne traffic increases in the DCC despite the impaired access, there would be a nonquantifiable increased potential for boat/barge related manatee mortality." Therefore, the district court did not err in refusing to interfere with the dredging of the Dania Cut-off Canal.

## THE ENDANGERED SPECIES ACT

■ The Coalition claims that the Corps' dredge and fill permit violated the Endangered Species Act because the Corps cannot ensure that its action will not be likely to jeopardize the endangered manatee. 16 U.S.C.A. § 1531–43 (Endangered Species Act). Agency action under the Endangered Species Act must be upheld, unless it is found to be arbitrary and capricious according to the Administrative Procedure Act. 5 U.S.C.A. § 706(2)(A); *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 685 (D.C.Cir.1982).

Under 16 U.S.C.A. § 1536(a)(2), each federal agency is obligated to ensure that "any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary ... to be critical." As part of that obligation, an agency that identifies programs or activities that may affect a listed species is required to consult the Fish & Wildlife Service for a biological opinion. 50 C.F.R. 402.04.

■ The district court found that the Corps had consulted with the Fish & Wildlife Service in accordance with 16 U.S.C.A. § 1536(a). The Fish & Wildlife Service's biological opinion stated that the project would not jeopardize any endangered species in the area. The Corps imposed eight additional conditions on the permit to minimize any possible injury to the manatee. The district court correctly concluded the Corps did everything required by the Fish and Wildlife Coordination Act. 16 U.S.C.A. § 661 *et seq.*

AFFIRMED.

TUTTLE, Senior Circuit Judge, dissenting:

With deference, I dissent. I agree that we should not substitute our judgment for the Corps of Engineers in making its final decision on the grant of the permit. I disagree completely, however, with the majority's decision that the Application for the permit contains sufficient information from

which either the public, who are entitled to notice, or the Corps of Engineers, could reasonably be expected to weigh the benefits against the disadvantages of the proposed fill. Obviously, the advantages and disadvantages cannot be weighed, one against the other, unless the *use* to which the filled land is to be put is explained in sufficient detail so that the public and the Corps can know *what* they are balancing against the loss of the wetlands. Here, the application was totally lacking in the information necessary for anyone to measure the advantages against the disadvantages of allowing the fill.

As stated in the majority opinion, Section 404 of the Clean Water Act, 33 U.S.C.A. § 1344 and the regulations issued thereunder require that, before a dredge and fill permit can be issued, the Corps must be provided with "a *complete* description of the proposed activity *including necessary drawings, sketches or plans* sufficient for public notice." (The emphasis throughout is added.) 33 C.F.R. § 335.1(d). The majority opinion further correctly, I think, states: "This public notice is primarily intended to advise all interested parties of the *proposed activity* for which a permit is sought and to *make possible* an *evaluation* of the probable impact on the public interest." That means, of course, that the public notice is intended to let everyone who is entitled to have the information know what benefits are to be achieved from the actual intended use in order to weigh those benefits against the loss to the environment resulting from filling the heretofore wetlands.

Now, what information does the application here give to meet this requirement? To begin with, it is to be noted from the development plan quoted in the majority opinion that such a plan was merely *"educated guesses* or examples of specific uses that are representative of the more generic marine industrial-commercial classification

given this project." Then, the educated guesses are:

> In *general*[1] terms ... to complement and supplement the activities of the Port Everglades Authority in a manner consistent with its industrial zoning classification. It is therefore anticipated that the property will be developed for marine industrial and commercial activities, such as port-related support facilities and services.... Some degree of container cargo or warehousing ... along with some trucking-distribution activities.

The plan then states: "Clearly, market demand and market conditions will have a major impact on the ultimate land uses, and *these variables cannot be evaluated* at this point."

It is clear to my mind that no one, whoever he or she might be, could weigh the advantages against the disadvantages of the fill on these lands from the uses suggested, to which, *even as general as they were, the owner made no actual commitment.* Even if the so-called "public" or the Corps of Engineers officials were prescient or even omniscient, they still could not properly weigh the one against the other because the applicants themselves did not know what the future use of the property would be.

In the absence of a sufficient application, of course, the whole process fails. I would therefore reverse the judgment of the trial court dismissing the complaint and denying the injunction.

---

1. Compare these *general* terms with the requirement of "a *complete* description."