**MIREE CONSTRUCTION
CORPORATION,**
Plaintiff,

v.

**Elizabeth DOLE, Secretary of United
States Department of Labor,**
Defendant.

**The Building and Construction
Trades Dept., AFL–CIO
BCTD, Amicus.**

**Civ. A. No. CV89–PT–0607–E.**

United States District Court,
N.D. Alabama, E.D.

Jan. 24, 1990.

386

Braxton Schell, Jr. and Bradley Alan Norton, Bradley Arant Rose & White, Birmingham, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty. and D. Wayne Rogers, Jr., Asst. U.S. Atty., N.D. Ala., Birmingham, Ala., for defendant.

John Lee Quinn, Longshore Nakamura & Quinn, Birmingham, Ala., for amicus curiae.

## MEMORANDUM OPINION

PROPST, District Judge.

This matter comes before the court upon the Motion for Summary Judgment filed by Miree Construction Corporation ("Miree") on July 27, 1989, and the cross Motion for Summary Judgment filed by the Secretary of the Department of Labor (the "Secretary"), on October 11, 1989.

Miree was the contractor on three construction projects [1] which were subject to wage determinations [2] made pursuant to the provisions of the Davis–Bacon Act, 40 U.S.C. § 276a et seq.[3] On each of these

---

1. Miree worked on a total of five contracts at these three projects.

2. The Davis–Bacon Act and the prevailing wage provisions of the related statutes listed in § 1.1 of this subtitle confer upon the Secretary of Labor the authority to predetermine, as minimum wages, those wage rates found to be prevailing for corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the area in which the work is to be performed.
29 C.F.R. § 5.22 (1988).

3. The wages paid by Miree on one of these projects were also subject to the provisions of the Housing and Community Development Act

of 1974, codified at 42 U.S.C. § 5301, et seq. The relevant portion of this Act is found at 42 U.S.C. § 5310 and provides:

All laborers and mechanics employed by contractors or subcontractors in the performance of construction work financed in whole or in part with assistance received under this chapter shall be paid wages at rates not less than those prevailing on similar construction in the locality as determined by the Secretary of Labor in accordance with the Davis–Bacon Act, as amended (40 U.S.C. 276a–276a–5).

As this passage demonstrates, the alleged violations of the Housing and Development Act in the present case are predicated upon a violation of the Davis–Bacon Act.

projects Miree paid certain sums[4] into the Apprenticeship Plan of the Associated Builders and Contractors of Alabama, Inc. ("ABC plan").[5] Miree took a credit for these sums against the prevailing wage it was obligated to pay its employees under the provisions of the Davis–Bacon Act.[6]

The Wage and Hour Division of the Department of Labor ("DOL") undertook an investigation of these payments to the ABC plan[7] and, following this investigation, Miree's claimed credits were partially disallowed.[8] Based on this partial disallowance, the DOL Administrator (the "Administrator") assigned to the investigation determined that Miree had underpaid its employees, and she advised the United States Army, the agency that had employed Miree, to withhold $11,208.00 that was due Miree.[9]

Miree disagreed with the Administrator's ruling, and asked that she reconsider her decision.[10] The plaintiff offered the following stipulation of facts:

1. The apprentice program fund of Associated Builders and Contractors of Alabama ("ABC") is unified rather than divided by individual crafts.

2. The Department of Labor approved the ABC apprentice program that is unified rather than divided by craft.

3. Individual workers employed by Miree on the referenced jobs worked in more than one job classification.

4. All amounts deducted by Miree for apprenticeship contributions were actually paid to an approved apprenticeship program.

5. The Department of Labor allows credit for apprenticeship fund deductions by employers who are parties to a collective bargaining agreement which were made in accordance with the provisions of that agreement, regardless of whether those employers currently employ apprentices.

6. The Department of Labor gives full credit for apprenticeship contributions pursuant to a collective bargaining agreement regardless of whether the apprenticeship program funded by the agreement is currently in operation.

7. The Department of Labor gives full credit for apprenticeship fund contributions pursuant to a collective bargaining agreement, regardless of the actual cost to the apprenticeship program of training the deducting employer's employees.

8. The Department of Labor has approved deductions of $.25 or more per hour for apprenticeship funds, when

4. Miree paid a total of $11,293.52 into the ABC plan for its 61 employees, for an average contribution of $185.14 per employee.

5. The ABC plan is approved, registered and sanctioned by the Department of Labor's Bureau of Apprenticeship and Training, and is authorized to provide apprenticeship training for a number of different crafts. Employers participating in the plan agree to assign apprentices to work that will result in the apprentices' normal advancement and not to employ the apprentice in a manner that may be considered in conflict with the plan's standards. The plan contains no training for laborers. Any amounts paid into the ABC plan are put into a general fund, and are not divided according to craft.

6. Under the Davis–Bacon Act a contractor may satisfy its obligation to pay the prevailing wage by making any combination of payments, in cash and fringe benefits, which equals the total amount of the basic hourly wage and fringe benefits required by the applicable prevailing wage schedule. See, 40 U.S.C. § 276a(b); 29 C.F.R. 5.31 (1988).

7. See, 29 C.F.R. § 5.6(b) (1988).

8. The ABC plan requires that the contractor pay $500 for tuition and books for each apprentice enrolled. Miree had one employee, an apprentice carpenter, enrolled in the plan during the relevant time period, July 1984 to March 1986. Miree paid the $500 required for his tuition to the ABC plan and, additionally, it paid $.25 per hour for all of its employees working as bricklayers, carpenters, or laborers on the Davis–Bacon projects during this time period. Miree did not make any contributions to the ABC plan for its employees working on private construction projects. The Administrator allowed Miree credit, on an annualized basis, for only the $500 tuition payment it made for the one employee it had in an apprenticeship program.

9. See, 29 C.F.R. § 5.5(3) (1988).

10. Miree also sought to have an Administrative Law Judge review this determination. However, the DOL concluded that Miree had not alleged adequate disputed facts to entitle them to a hearing before an ALJ. See, 29 C.F.R. § 5.11(b) (1988).

388

those deductions are made pursuant to a bona fide collective bargaining agreement.

9. The tuition paid for attendance of the ABC apprentice training program is not sufficient to cover the cost of that program.

10. Funding for the ABC apprentice program comes primarily from services unrelated to government-funded work.

Defendants "Administration" responded as follows:

Stipulation One: We concur that the Alabama Chapter's Associated Builders and Contractors (ABC) apprenticeship plan covers a number of crafts rather than individual crafts, but the plan does not encompass the laborers' classification.

Stipulation Two: We are aware that the Bureau of Apprenticeship and Training (BAT), Department of Labor, approved the ABC Alabama apprenticeship plan.

Stipulation Three: We agree that some of Miree's employees worked in more than one craft classification.

Stipulation Four: We have no evidence that payments were not made to the ABC Alabama apprenticeship program during the time Miree worked on the cited contracts and we are not making any such allegation.

Stipulation Five: We concur.

Stipulation Six: We cannot comment because it is not clear what is meant by the terminology "currently in operation" in this proposed stipulation.

Stipulation Seven: The Department of Labor gives full credit for the amounts required to be contributed under a plan, based on the assumption that there exists a reasonable relationship between the amount of contributions on the one hand and the cost of providing training and administering the plan on the other

hand. Under the Alabama Chapter's ABC plan, the amount of contributions required was, in fact, the amount charged to Miree for tuition to train individual apprentices.

Stipulation Eight: We concur but we believe this stipulation is irrelevant in this case.

Stipulation Nine: We lack the necessary information to determine whether the tuition paid by Miree for attendance at the ABC apprenticeship program is sufficient to cover the cost of that program. However, we have given the firm full credit for those costs for which evidence has been provided.

Stipulation Ten: We do not have sufficient information to comment on this stipulation, but we feel it is irrelevant to this case.

The Wage Appeals Board took no issue with plaintiff's suggested stipulations. On July 6, 1986, the Administrator reaffirmed her decision by issuing a statement in which she held that the payments in excess of the actual cost required to fund the ABC plan would not be creditable. Miree appealed this decision administratively to the Wage Appeals Board ("the Board").[11]

The plurality decision issued by the Board, on February 17, 1989, affirmed the Administrator's ruling.[12] Miree has appealed to this court from this ruling by the Board.

■ Initially, this court must determine whether it has the authority to review the present decision of the DOL Wage Appeals Board. This court notes preliminarily that there is a strong presumption in favor of judicial review of administrative decisions under the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551 *et seq.* See, *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The

11. The Board is an independent three person panel authorized by the Secretary of the Department of Labor to review decisions concerning, among other things, interpretation and application of the Davis–Bacon Act. The rules of practice of the Wage Appeals Board are found at 29 C.F.R. §§ 7.1 to 7.18 (1988). The determination of the Board is a final agency action from which a person may seek judicial review. See, 5 U.S.C.

§ 704; *Building & Const. Trades Dep't v. United States Dep't of Labor Wage Appeals Board,* 829 F.2d 1186 (D.C.Cir.1987).

12. The Board's decision was written by Member Dunn, with Member Rothman concurring with this decision. Chairman Andrews dissented from this decision.

APA provides that there will be judicial review of administrative actions "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

In discussing the relationship of these two exceptions to the Davis–Bacon Act one court has held:

> Under the [Administrative Procedure] Act, a statute is deemed to restrict access to judicial review "only upon a showing of 'clear and convincing evidence' of ... legislative intent." [*Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)]. The Davis–Bacon Act does not expressly preclude judicial review. Those portions of the legislative history which suggest a preclusion of review are addressed to review of wage determinations, not of agency decisions as to coverage of the Davis–Bacon Act.
>
> . . . .
>
> Nor is the Wage Appeals Board's decision "committed to agency discretion by law." This "very narrow" exception to judicial review will be applied only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" [*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971)]. The Davis–Bacon Act is not so broadly drawn as to commit the issue of its coverage to agency discretion. We conclude that the Wage Appeals Board decision as to the applicability of the Davis–Bacon Act is reviewable in accordance with the standards of the Administrative Procedure Act.

*North Georgia Bldg. & Const. Trades Council v. Goldschmidt*, 621 F.2d 697, 707–08 (5th Cir.1980).

Although a determination of the Board regarding a specific wage rate is not subject to judicial review, it appears that any determination concerning a broader policy question is subject to such review. *See, Universities Research Ass's. Inc. v. Coutu,*

450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981) (the Court held that there could be no judicial review of wage determinations made by the Secretary, but did not express an opinion on whether judicial review of other practices and procedures of the Secretary was proper); see also, *North Georgia Bldg. & Const. Trades Council, supra.*

Allowing a court to review administrative decisions, except those concerning wage determinations, made regarding the Davis–Bacon Act is also in keeping with the general policy of deferring to an agency in its field of expertise, see, *Environmental Coalition of Broward County, Inc. v. Myers*, 831 F.2d 984 (11th Cir.1987), but of giving no such deference to agency action when questions of law are involved, see, *Pollgreen v. Morris*, 770 F.2d 1536 *reh'g denied* 781 F.2d 905 (11th Cir.1985).

In discussing a situation involving a federal agency similar to the Wage Appeals Board, the United States Supreme Court has stated:

> Like the National Labor Relations Board ... the FLRA [Federal Labor Relations Authority] was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the [Civil Service Reform] Act.... Consequently, the Authority is entitled to considerable deference when it exercises its "special function of applying the general provisions of the Act to the complexities" of federal labor relations.
>
> . . . .
>
> On the other hand, the "deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions made by Congress." *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318 [85 S.Ct. 955, 967, 13 L.Ed.2d 855] (1965). Accordingly, while reviewing court's should uphold reasonable and defensible constructions of an agency's enabling Act ... they must not "rubber-stamp ... administrative decisions that they deem incon-

sistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *NLRB v. Brown*, 380 U.S. 278, 291–292 [85 S.Ct. 980, 988, 13 L.Ed.2d 839] (1965).

*Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983).

■ Applying these principles to the present case it is evident that the decision of the Wage Appeals Board is reviewable by this court. The current decision is not one committed to agency discretion by law, and, as previously noted, Congress did not intend to preclude judicial review of decisions involving the Davis–Bacon Act. Having determined that review is proper, this court will now examine the scope of such review.

The provisions governing the scope of review under the APA are set forth in 5 U.S.C. § 706.

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> (B) contrary to constitutional right, power, privilege, or immunity;
>>
>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>>
>> (D) without observance of procedure required by law;
>>
>> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

In discussing review under this section, the Supreme Court has stated:

> But the existence of judicial review is only the start: the standard for review must be determined. For that we must look to § 706 of the Administrative Procedure Act, 5 U.S.C. § 706 (1964 ed., Supp. V), which provides that a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found" not to meet six separate standards. In all cases agency action must be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the action failed to meet statutory, procedural, or constitutional requirements. 5 U.S.C. §§ 706(2)(A), (B), (C), (D) (1964 ed., Supp. V). In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by "substantial evidence." And in other equally narrow circumstances the reviewing court is to engage in a *de novo* review of the action and set it aside if it was "unwarranted by the facts." 5 U.S.C. §§ 706(2)(E), (F) (1964 ed., Supp. V).

> .　　.　　.　　.　　.

> Review under the substantial-evidence test is authorized only when agency action is taken pursuant to a rulemaking provision of the Administrative Procedure Act itself, 5 U.S.C. § 553 (1964 ed., Supp. V), or when the agency action is based on a public adjudicatory hearing. See 5 U.S.C. §§ 556, 557 (1964 ed., Supp V).

> .　　.　　.　　.　　.

> *De novo* review of whether the Secretary's decision was "unwarranted by the facts" is authorized by § 706(2)(F) in only two circumstances. First, such *de novo* review is authorized when the ac-

tion is adjudicatory in nature and the agency factfinding procedures are inadequate. And, there may be independent judicial factfinding when issues that were not before the agency are raised in a proceeding to enforce the nonadjudicatory agency action. H.R.Rep. No. 1980, 79th Cong., 2d Sess.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–15, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971).

In the present case there have been no allegations, nor does this court find, that the Board's decision failed to meet any statutory, procedural, or constitutional requirements. This court further finds that the Board's factfinding procedures were adequate, and that no new issues have been raised by either side. The present case also does not involve any administrative rulemaking, nor is it concerned with an appeal from a hearing required by 5 U.S.C. §§ 556 or 557.[13]

Therefore, the actions of the Board will be reviewed by this court only to see if they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[14]

A finding that a decision was arbitrary or capricious requires us to find no rational basis for the decision. *Bowman Transportation, Inc. v. Arkansas–Best Freight Systems,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). Once we find a rational connection between the evidence and the decision, we must defer to the agency's expertise. *Id.* at 286, 95 S.Ct. at 442; *Home Health Services v. Schweiker,* 683 F.2d 353, 356–57 (11th Cir.1982).

*Tackitt v. Prudential Ins. Co. of America,* 758 F.2d 1572, 1575 (11th Cir.1985).

In dealing with an appeal involving a situation similar to the present one, one court has held:

In *Bank of Commerce of Laredo v. City National Bank of Laredo,* 484 F.2d 284, 289 (5th Cir.1973). *cert. denied* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974), the Fifth Circuit stated that "when a plaintiff who has no right to a trial de novo brings an action to review an administrative record which is before the reviewing court, the case is ripe for summary disposition, for whether the order is supported by sufficient evidence, under the applicable statutory standard, or is otherwise legally assailable, involve matters of law. The appropriate legal standard for conducting such review is that established by the legislation authorizing the agency action and the appurtenant provisions of the Administrative Procedure Act." Thus ... the court's role here is not to resolve contested fact questions which may exist in the underlying administrative record, but rather the court must determine the legal question of whether the agency's action was arbitrary and capricious.

*Gilbert Equip. Co., Inc. v. Higgins,* 709 F.Supp. 1071, 1077 (S.D.Ala.1989).

This court agrees that the current case is one that may be disposed of through summary judgment.[15] The limited role of a district court in ruling on a motion for summary judgement is well established.

Our prior decisions may not have uniformly recited the same language in describing genuine factual issues under Rule 56, but it is clear enough from our recent cases that at the summary judgment stage the judge's function is not

---

**13.** There is no statutory right to appeal an adverse decision of the Administrator. The Board has the right, in its discretion, to review a decision of the Administrator, but is not required to do so. See, 29 C.F.R. § 7.8 (1989).

**14.** While the court recognizes that it cannot defer to the agency's decision with regard to pure questions of law relating to statutory construction, the expertise of the defendant is entitled to some deference if the statutory language is not entirely clear as to the issue and if the legislative history is not compelling, see, *Chev-*

*ron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

**15.** Miree's request for a hearing before an ALJ was denied because it was determined that there were no relevant disputed facts. The facts were stipulated and both sides have suggested that summary judgment is appropriate. See plaintiff's initial brief, page 4 and defendant's brief, page 2.

himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985).

The inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Id.* 477 U.S. at 250, 106 S.Ct. at 2511. A party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact in the case. [citations omitted]. In determining whether a movant has met this burden, we review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. [citations omitted]. All reasonable doubts about the facts are resolved in favor of the nonmovant. [citation omitted]. If reasonable minds might differ on the inferences arising from undisputed facts, then we should deny summary judgment. [citation omitted].

*Hinesville Bank v. Pony Express Courier Corp.*, 868 F.2d 1532, 1534–35 (11th Cir. 1989). See, *Cornelius v. Town of Highland Lake Alabama*, 880 F.2d 348 (11th Cir.1989).

■ This court's review of a decision of an agency like the Wage Appeals Board is limited, except in unusual situations, to the record prepared by the agency itself. See, *Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 357 (8th Cir.1984) *cert. denied* 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985). While it is true that in reviewing an administrative action under the APA a court must undertake a "[t]horough, probing, in-depth review." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), when such judicial review takes place "[T]he focal point ... should be the administrative record already in existence, not some new record made initially in the reviewing court." *Florida Power and Light Co. v. Lorion*, 470 U.S. 729, 743, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985) (citing *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)).

■ An examination of the record before this court shows that the Administrator set forth three main points in her decision. First, that the amount of Davis–Bacon credit was properly limited to the amount Miree was *required* to pay by the ABC plan; second, that Miree's rate of contribution to the ABC plan would be allowed Davis–Bacon credit only on an annualized basis; and, finally, that any Davis–Bacon credit was properly limited to payments made on behalf of carpenters. In her decision, the Administrator discussed each of these points in some detail.[16]

■ Initially, the administrator determined that the ABC plan was a "funded" plan as described in 40 U.S.C. § 276a(b)(2)(A).[17] In the Administrator's

---

**16.** Although there are three issues involved in the case, it would appear that, under the facts of this case, the decision that plaintiff could not take credit for contributions above the amounts specifically spent as tuition for its employees who were working on the regulated projects overlaps, and is perhaps inclusive of, the issue of whether contributions could be credited when made for job classifications in which none of the plaintiff's employees were being trained.

**17.** The provisions of the Davis–Bacon Act that determine whether a plan, including an apprenticeship plan, is classified as "funded" or "unfunded" are found at 40 U.S.C. § 276a(b).

As used in Sections 276a to 276a–5 of this title the term "wages", "scale of wages", "wage rates", "minimum wages", and "prevailing wages" shall include—
(1) the basic hourly rate of pay; and
(2) the amount of—
(A) the rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program [a "funded" plan]; and
(B) the rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program [an "unfunded" plan] which was communicated in writing to the laborers and mechanics affected,

view, a "funded" plan generally requires that a participant make a certain "rate of contribution" to it annually. In the case of the ABC, the administrator found that the only required "rate of contribution" was the $500 tuition payment, therefore, any other payments made were merely voluntary contributions.[18] The Administrator concluded that any other result would allow a contractor to contribute at any rate it desired, without regard for the actual cost of the plan involved.[19]

The Administrator next discussed her ruling that Miree would only be allowed Davis–Bacon credit for its rate of contribution on an annualized basis. Miree made contributions to the ABC plan only during periods when it was performing Davis–Bacon work. The Administrator held that Miree would be given Davis–Bacon credit based upon the annualization principle, which was computed by dividing the total contribution made in each classification in which an apprentice worked, by the total number of hours worked in the same classification, on both government and private projects.[20]

According to the Administrator, it has long been the position of the Wage and Hour Division that Davis–Bacon credit for apprenticeship training must be computed on an annualized basis. The Administrator did note that neither the Davis–Bacon Act, nor its legislative history, explicitly states what period of time the rate of contribution must be made over.[21] However, she concluded that the purpose of the annualization principle is to ensure that any amounts credited toward the prevailing wage to be paid on contracts subject to the Davis–Bacon Act are solely those paid for that work. Otherwise, contributions made during the

for ... defraying costs of apprenticeship or other similar programs....

In simpler terms, an apprenticeship plan is a "funded" plan if it expressly provides for its funding by contributions irrevocably made by a contractor or subcontractor to a trustee or a third party pursuant to a fund, plan or scheme. An "unfunded" apprenticeship plan is one where a contractor or subcontractor purchases these fringe benefits for its employees, then takes a credit for these purchases, if they were reasonably anticipated, against its obligation to pay the prevailing wage. Typically, a union plan, established through a collective bargaining agreement, is a "funded" plan. Plaintiff argues that its contributions were to a "funded" plan or, if not, that the contributions are allowable under § 1(b)(2)(B). The defendant argues that the contributions were not made "pursuant" to a funded plan.

The record does not appear to support a finding under § 1(b)(2)(B) of the Act that the "plan" was "communicated in writing to the laborers and mechanics affected ...", or that the contributions were necessary to defray costs of apprenticeship program. The plaintiff argues that "it has been stipulated that the amounts chosen by Miree for contribution are reasonable." This has apparent reference to No. 8. The court does not conclude that this stipulation, if it says what plaintiff says, applies to a(1)(b)(2)(B) contribution. Plaintiff argues that "contributions of $.25 per hour are routinely approved as reasonable." It is not clear that this is in addition to tuition payments.

**18.** There is no evidence that the apprentice could not have been enrolled in the program for $500.00 without other contributions being required of plaintiff.

**19.** Plaintiff argues that the Apprenticeship Trust of ABC must be subsidized. This does not allow, however, its subsidization in a manner which unduly reduces Davis–Bacon or Davis–Bacon type wages.

**20.** The annualization principle, as described by the Administrator, originated in the area of health insurance plans. If a contractor purchased health insurance for an employee he could take Davis–Bacon credit for the appropriate portion of this benefit for any hours worked on government projects. The hourly Davis–Bacon credit would be derived by dividing the actual cost of the benefit by the total number of hours worked by the employee on government and private projects during the year. This principle was later expanded to other areas of fringe benefits, including apprenticeship plans.

**21.** The Administrator, after discussing the history of the Davis–Bacon Act, concluded that the annualization principle is reasonable and consistent with congressional intent. She noted that at the time the Davis–Bacon Act was passed the type of fringe benefit plans that were prevalent were collectively bargained ones which provided for the same rate of contribution for all hours worked by an employee during the year, which was effectively an annual rate of contribution. The Administrator then reasoned that Congress believed most future benefit plans would be collectively bargained ones, and that it did not envision a contractor would try to avoid its Davis–Bacon obligations by funding a year round apprenticeship plan through contributions made only during Davis–Bacon work.

Davis–Bacon work could be used as the main or exclusive source of a benefit that is continuous in nature. The Administrator reasoned that such disproportionate funding would cause an employee on a Davis–Bacon project to receive less than the prevailing wage he is entitled to, thus, frustrating the purpose of the Davis–Bacon Act.

The Administrator also addressed Miree's argument that the annualization principle, while appropriately applied to other fringe benefits, should not be applied to apprenticeship plans. Miree asserted that contributions to an apprenticeship plan do not directly benefit the individual employee in any tangible manner, therefore, they are different from other fringe benefits. In rebutting this argument the Administrator held that the ABC plan, which provides training continuously and is not limited to work performed on Davis–Bacon projects, is analogous to other fringe benefits, and should be treated similarly. Thus, she concluded there was no reason to treat contributions to the ABC plan differently from any other fringe benefit and the annualization principle, therefore, applied.

Miree's argument that the Administrator, in applying the annualization principle to the payments to the ABC plan, exceeded her authority by regulating fringe benefits paid on private work was also found unavailing by the Administrator. Miree contended that the Administrator's ruling *required* them to make the same rate of contribution for private work that it did for Davis–Bacon work. While acknowledging that the rate paid on private work could affect the determination of how much Davis–Bacon credit a contractor received, the Administrator held that in the present case it was merely deciding what the "rate of contribution" creditable under the Act was. The Administrator analogized the situation to one concerning health insurance. She reasoned that if it was within her power to determine that only a portion of a contractor's health insurance payments were creditable under Davis–Bacon, it

would be inconsistent to hold she could not make the same determination regarding apprenticeship plans.

Finally, the Administrator discussed the denial of credit for payments made on behalf of bricklayers and laborers. She began by stating the general rule that a contractor may not use a payment on behalf of workers in one classification to offset obligations due a worker in another classification. Under the ABC plan the only required payments were for training actually provided to the contractor's employees. Because the only apprentice employed by Miree on the Davis–Bacon projects in question was a carpenter's apprentice, the Administrator concluded that any payments made on behalf of workers in other classifications would not be allowed. Therefore, Miree could not take a Davis–Bacon credit for any payments made on behalf of bricklayers or laborers.[22]

In opposition to this position, Miree argued that the failure to give credit for payments made on behalf of all classifications of workers ignored the reality of the merit shop system, where an employee may perform work in several classifications on the same project. The Administrator discounted this argument and stated that the practice of using an apprentice for various jobs appeared inconsistent with the purposes of the ABC plan. This practice, in the Administrator's view, did not conform with Miree's obligation under the ABC plan to employ an apprentice in a manner that would lead to his normal advancement. The Administrator concluded that the policies of the ABC plan, which are craft-oriented, are consistent with her position that the contributions made by Miree were only creditable if made on behalf of workers actually employed in a particular classification.

As previously noted, the Board affirmed the Administrator's decision in a plurality opinion. Member Dunn agreed with the Administrator that the only "contribution"

---

**22.** The Administrator also pointed out that the ABC plan did not provide training for laborers, thus, under no circumstances could payments made to the ABC plan on behalf of laborers be creditable.

Miree was required to make to the ABC plan was the payment of the $500 tuition, and that any other amount paid in was not creditable for Davis–Bacon purposes. However, Member Dunn disagreed with the Administrator's conclusion that the ABC plan was a "funded" plan.[23] In his opinion, Member Dunn discussed at some length the difference between "funded" and "unfunded" plans.[24] He reasoned that Miree was not entitled to receive credit for the payments it made to the ABC plan, except for the $500 for tuition, because these payments were not made "pursuant to a fund, plan, or program" as required by 40 U.S.C. § 276a(b)(2)(A), which deals with "unfunded" plans.

Member Dunn also agreed with the Administrator that the annualization principle should be applied to all fringe benefits, including apprenticeship plans. He pointed out that apprenticeship plans were listed in 40 U.S.C. § 276a(b) as one of the types of fringe benefits that an employer could receive Davis–Bacon credit for providing. He concluded, as did the Administrator, that apprenticeship plans should be treated like any other fringe benefit and, therefore, the annualization principle should apply.[25] He further agreed with the Administrator that her decision did not result in the regu-

lation of the "rate of costs" Miree paid on private jobs.[26]

The decision of the Administrator to allow Miree credit only for the classification of carpenter was also agreed with by Member Dunn. While he admitted this was a close question, Member Dunn nonetheless supported the Administrator's position. He stated that the argument of Miree, that the Administrator's decision ignored the realities of the merit shop system, would be more persuasive if the ABC plan had been designed to train apprentices as cross-craft workers. Member Dunn agreed with the Administrator that Miree's method of using apprentices in several classifications while on the same project appeared inconsistent with the craft oriented structure of the ABC plan.

In the conclusion to his opinion, Member Dunn stated that he affirmed the Administrator's decision that Miree was entitled to receive credit for its costs of training carpenters, but it was not entitled to credit for the voluntary contributions it made to the ABC plan.

In his opinion Member Rothman concurred with the result of Member Dunn's opinion, but expressed a different view as to any future cases of a similar nature.

**23.** In his opinion Member Dunn held the ABC plan was an "unfunded" plan and, thus, uses the term "rate of costs", which is used in 40 U.S.C. § 276a(b)(2)(B). The Administrator used the term "rate of contribution", which is applied to "funded" plans under 40 U.S.C. § 276a(b)(2)(A).

**24.** As Miree correctly points out, the majority of Member Dunn's opinion is a verbatim recitation of the brief filed with the Board by the Building and Construction Trades Department, AFL–CIO ("the BCTD") as an interested party. Interested parties are allowed to present arguments to the Board under the provisions of 29 C.F.R. § 7.7 (1988). The BCTD also sought leave of this court to intervene in the present case, but that motion was denied. However, this court did allow the BCTD to file an *amicus curiae* brief. In its *amicus* brief the BCTD continues to be concerned with whether the ABC plan is characterized as "funded" or "unfunded". As this court stated in its opinion denying the motion to intervene of the BCTD, the "funded v. unfunded" issue is not relevant to the present case, and, therefore, it need be discussed no further by this court.

**25.** Member Dunn went further and held that the annualization principle was not the only method available to determine a contractor's "rate of costs". The "rate of costs" a contractor can receive credit for are those "reasonably anticipated". 40 U.S.C. § 276a(b)(2)(B). As Member Dunn pointed out, this phrase is further discussed in 29 C.F.R. § 5.28(c) (1988). "[T]he words 'reasonably anticipated' are intended to require that any unfunded plan or program be able to withstand a test which can perhaps be best described as one of actuarial soundness." If no such evidence is present, Member Dunn stated the annualization principle is a reasonable method to use to determine a contractor's "rate of costs".

**26.** Member Dunn acknowledged, as did the Administrator, that the length of time worked on private projects, and the amount of contributions made during these periods, would affect the determination of the "rate of costs" Miree received credit for. However, neither Member Dunn nor the Administrator found this would result in the regulation of the contributions Miree made on any private projects.

Member Rothman then proceeded to list ten points that he thought should be taken into consideration in any future cases dealing with similar factual situations.[27]

Chairman Andrews, dissenting from the opinion of Member Dunn, stated that he believed the case should have been remanded for further determinations. He recognized that the case presented the Board with several issues, but he thought the most fundamental one was whether "[D]avis–Bacon fringe benefit payments to a BAT [Bureau of Apprenticeship and Training] approved apprenticeship program must be fully credited by the Administrator, without any regard to whether or not it made similar contributions on private jobs not covered by the Davis–Bacon and related Acts."

Even though he dissented, Chairman Andrews did support the Administrator on several points. He agreed that the Administrator was correct in using the annualization principle to determine the amount of credit Miree could receive.[28] Chairman Andrews further stated that the actions of the Administrator did not result in regulation of the amounts that Miree had to contribute on its private projects. Nor did he find the Administrator's ruling, by applying the annualization principle, discriminated against non-union contractors.

While the plurality decision of the Board is slightly confusing, its impact is still clear; it affirmed the decision of the Administrator. As one court has stated in discussing the court's role in reviewing administrative actions:

> The court's proper function in reviewing an agency's action is to determine whether the agency has "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983); *Bowman Transportation Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). To affirm, a court must only determine that the agency had a rational basis for its decision. "While we will not supply a reasoned basis for the agency's action that the agency itself has not given, *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman*, 419 U.S. at 285–86, 95 S.Ct. at 442.

*Manasota–88, Inc. v. Thomas*, 799 F.2d 687, 691 (11th Cir.1986).

■ The primary thrust of plaintiff's argument is that the decision of the Wage Appeals Board operates to unfairly discriminate against plaintiff vis a vis union contractors. This dichotomy of interests also explains the involvement of the BCTD. The primary basis for the Wage Appeal Board's distinction between contributions between union plans and the plan here at issue is that the union plan contributions are collectively bargained for and are required *"pursuant to"* such collectively bargained for "fund[s] plan[s], or program[s]." Further, that such bargained for funds, plans or programs require contributions for both jobs covered under the applicable statutes and for private jobs. This court cannot conclude that such a distinction is unfairly or illegally discriminatory, arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Plaintiff did not make contributions

---

**27.** Member Rothman noted that these points would have no retroactive effect and, because neither of the other Board members joined in his views, would also be a minority view. He nonetheless felt they would provide guidance for similar future cases.

**28.** Chairman Andrews found that the annualization principle was properly applied to determine the credit Miree would receive for its contributions to the ABC plan. In support of this view, he restated his position that the government's main interest was to assure that any apprenticeship contributions credited against the prevailing wage benefitted the workers who were performing this government work. Thus, the annualization principle insured that contributions credited against wages due on Davis–Bacon projects were not diverted to benefit workers on private projects.

*pursuant to* a plan.[29]

 An examination of the Board's decision demonstrates that it carefully considered the Administrator's ruling, and provided ample support for its affirmance. Because there are no factual disputes, and the Boards's decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law", this court is compelled to deny the plaintiff's Motion for Summary Judgment, and to grant the defendant's Motion for Summary Judgment.[30] The court cites with approval the following language from *Coca–Cola Co. v. Atchison, T. & S.F. Ry. Co.,* 608 F.2d 213, 218 (5th Cir.1979):

> Factual findings and findings on mixed questions of fact and law of the ICC are subject to a limited standard of judicial review and are set aside only if "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or if "unsupported by substantial evidence." [citations omitted].
>
> \* \* \* \* \* \*
>
> As one commentator has suggested, often questions of fact and questions of law are inextricably entangled.
>
> \* \* \* \* \* \*
>
> But many cases arise, where as here, the questions of law are clearly separate and apart from factual disputes.

*Id.* at 218.

This court does not conclude that the questions of law in this case are "clearly separate and apart from factual disputes," particularly as to facts or inferences now argued by plaintiff which are not clearly expressed in the stipulation. In any event, the applicable law is not so clear in its statement or by virtue of its history to allow the court to avoid any deference to the agency's interpretation. Even if the

29. Plaintiff acknowledges that the legislative history is "silent" on the meaning of "contribution irrevocably *made* ... pursuant to...." The court believes that the defendant's interpretation is reasonable.

30. Miree argues that the plurality decision of the Board, in which each member used a different rationale, should be given little deference.

arbitrary and capricious standard does not apply, this court cannot conclude that the defendants construction of the statute is not a permissible one. In *Chevron U.S.A., Inc. v. National Resources Defense Counsel, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.[9] If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.[11]

---

9 The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. [citations omitted].

If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

11 The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. [citations omitted].

---

\* \* \* \* \* \*

The court finds this argument unpersuasive. Additionally, this court is aware that an agency's decision may not be overturned just because the reviewing court is unhappy with the result reached, see, *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1979).

**398**

We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations

has been consistently followed by this Court whenever decision as to the meaning or reach of a statute had involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.

\* \* \* \* \* \*

... If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned. *United States v. Shimer*, 367 U.S. 374, 382, 383 [81 S.Ct. 1554, 1560, 1561, 6 L.Ed.2d 908] (1961).

The Motion for Summary Judgment of the plaintiff is due to be DENIED, and the Motion for Summary Judgment of the defendant is due to be GRANTED.

DONE and ORDERED.