60349, 60350. CONSIDINE COMPANY OF GEORGIA, INC. et al. v. TURNER COMMUNICATIONS CORPORATION; and vice versa.

BANKE, Judge.

This is a suit by Turner Communications, Inc., against The Considine Company of Georgia and John W. Wermischer to recover an indebtedness allegedly due under a contract for the installation and maintenance of an outdoor advertising display. The display advertised an apartment complex owned by defendant Considine. It is undisputed that both defendants signed an order calling for the sign to be displayed for 12 months at a "gross" cost of $1,185 per month. The document further provided that the location of the sign would be changed every 60 days pursuant to a plan designated as a "one leg Atlanta Metro Rotary." The first location was specified in writing, and the parties agreed orally that the remaining locations would be chosen at a later date.

Defendant Wermischer signed the order on behalf of "John

Wermischer & Associates," in a space designated for the "advertising agency." It was understood by all parties that Wermischer would prepare the graphic design for the display and that Turner would allow a $197.50 per month "advertising agency discount" for his services. Thus, the net amount which Turner was to receive from Considine was $987.50 per month rather than $1,185 per month. However, the "advertising agency discount" was subject to a forfeiture provision which will be discussed infra.

Turner accepted the display order on November 1, 1978. The sign was to go up in December of 1978. On November 15, however, Wermischer, acting at Considine's request, sent Turner a letter advising that Considine wished to cancel the order and requesting that work on the project be halted. By the time the letter reached Turner, however, the movable metal panels which were to make up the sign had already been painted. On November 20, Turner replied with a letter stating that the contract was "non-cancellable." Considine responded on December 12 with another letter, stating, "[W]e will pay for any charges on painting the billboard, but we do not and have not agreed to pay for the billboard for 12 months." Turner nevertheless erected the sign at the location specified in the contract and left it there for the following 12 months. No payment was ever made on the account.

Considine and Wermischer contend that because the subsequent locations for the sign were not specified in the display order and because they were never subsequently agreed upon, no contract ever came into existence. They also contend that Turner made no attempt to comply with its legal duty to mitigate damages by taking the sign down and renting the space to someone else during the course of the year. Wermischer sought additionally to introduce evidence that he told Turner's sales agent that he was not an advertising agent but only a design artist and that Turner's agent nevertheless told him that he had to sign the order in order to receive his commission. The trial judge, however, ruled as a matter of law that both Wermischer and Considine were liable for payment of the net monthly cost specified in the contract, i.e., $987.50 per month. He accordingly directed a verdict against them for $11,850, thereby rejecting Turner's claim that it was entitled to the gross contract price of $1,185 per month, or $14,220. Turner's demands for pre-judgment interest and attorney fees were also disallowed. The defendants filed an appeal and Turner a cross-appeal. *Held:*

1. We agree with the trial court that a contract existed as a matter of law, even though the parties never reached an agreement on the future locations for the sign. While the defendants contend that such an agreement was an essential element of the contract, the

undisputed evidence shows that the parties did not intend to deal with this issue until after work on the project had already begun. By the time the defendants wrote to Turner seeking to "cancel" the contract, Wermischer had already submitted the design, and Turner had either completed or was on the verge of completing the complex process of transferring the design to the metal plates which made up the sign. Although it is true that the defendants had the right to approve the future locations, that fact does not negate the prior existence of a contract. Accord, *Commercial Mtg. & Fin. Corp. v. Greenwich Savings Bank,* 112 Ga. App. 388 (145 SE2d 249) (1965). See generally 17 AmJur2d 807, Contracts, § 366.

2. Having concluded that the defendants were liable for breach of contract as a matter of law, the trial court informed them that they would not be allowed to attempt to present evidence to the contrary. Both defendants urge that this was reversible error. However, Considine made no offer of proof on the issue. Thus, we have no way of knowing what evidence it was allegedly prevented from submitting, and thus we find no ground for reversal as far as Considine is concerned. Wermischer, on the other hand, made an offer of proof to the effect that he told Turner's sales agent that his firm was *not* an advertising agency and that the agent nevertheless told him that he needed to sign the order to get paid. Although Turner's agent testified that Wermischer subsequently acknowledged that his signature made him responsible for payment, this testimony merely created a conflict in the evidence for the jury to resolve; it did not demand a finding against Wermischer as a matter of law. Accordingly, the direction of a verdict against Wermischer was in error, and the judgment against him is reversed.

3. None of the evidence offered by the defendants created a jury issue on their contention that Turner failed to comply with its duty to mitigate damages, pursuant to Code § 20-1410. Such a contention must be supported by evidence from which a jury could reasonably estimate the amount by which damages could have been mitigated. See *Branon v. Ellbee Pictures Corp.,* 42 Ga. App. 293 (155 SE 923) (1930); *Davidson v. Consolidated Quarries Corp.,* 99 Ga. App. 359, 373 (a) (108 SE2d 495) (1959). The defendants in this case made no attempt to show the additional cost which Turner would have incurred had their sign been removed and replaced with another customer's. Accordingly, even assuming *arguendo* that Turner could have relet the space to someone else for all or part of the year, there was no basis upon which the jury could have estimated the net additional income which such an action would have generated. For this reason, the trial court did not err in excluding evidence purporting to show that there were other potential purchasers for the

space.

4. The trial court was correct in holding that Turner was not entitled to recover the "advertising agency commissions," or "advertising agency discount" to which Wermischer was entitled under the terms of the contract. The display order provided that "[a]dvertising agency commissions, where applicable, will be forfeited if payment to Turner is not made within (60) days after date of invoice, and the gross amount of the installments, plus related interest shall be remitted to Turner." However, the evidence establishes without dispute that Turner never sent any invoices. Furthermore, this forfeiture provision bears no relationship to actual damages and thus constitutes an unenforceable penalty. See *Miazza v. Western Union Tel. Co.,* 50 Ga. App. 521 (1) (178 SE 764) (1934); *Jones v. Clark,* 147 Ga. App. 657 (2) (249 SE2d 619) (1978).

5. The defendants concede that the trial court erred in ruling that the attorney fees provision of the contract was insufficiently specific to be enforceable but nevertheless urge that the denial of attorney fees was correct because the entire obligation had not matured at the time the suit was filed.

Code § 20-506 (c) provides that, to enforce a contractual provision for the collection of attorney fees, the creditor must send a notice of its intention to collect attorney fees "after maturity of the obligation." See *General Elec. Credit Corp. v. Brooks,* 242 Ga. 109 (249 SE2d 596) (1978). The contract called for monthly payments to be made from December of 1978 until December of 1979. On April 9, 1979, Turner sent a letter to each defendant demanding full payment and informing them of its intention to collect attorney fees unless such payment was received within 10 days. Suit was filed on May 3, 1979, seven months before the final installment was due.

Turner contends that all future installments had matured through operation of the following "acceleration" provision: "In the case of any installments more than sixty (60) days past due, Turner may, at its option, treat the failure to pay such installment(s) as a total and complete breach of this contract, and Turner may make demand on us for full payment of the entire unpaid amount of this contract. If we fail to make this full payment within ten (10) days after demand, Turner may remove our advertising and make its best effort to relet the advertising space upon such terms and conditions as Turner may be able to obtain. We shall be liable to Turner in damages for the difference between the total amounts due under this contract for the entire term, plus the total costs and expenses connected with Turner's efforts to relet, less any amounts Turner may collect upon reletting."

If there is any ambiguity about the construction of a written

contract, it will be construed most strongly against the party that prepared it. See *Howkins v. Atlanta Baggage & Cab. Co.,* 107 Ga. App. 38 (1) (129 SE2d 158) (1962); *Oak Creek Dev. Corp. v. Hartline-Thomas, Inc.,* 138 Ga. App. 83, 85 (225 SE2d 515) (1976). The default provision quoted above does not give Turner an unambiguous right to accelerate and sue for all unpaid installments upon a default in payment. Rather, it gives Turner the right to make demand for payment of unpaid installments upon default and to remove the advertising and relet the space if such payment is not received within 10 days. The customer may then be held liable for all the installments, plus any expenses connected with reletting, less any income obtained from reletting. This figure, of course, cannot be determined until the entire contract term has run. Thus, at the time Turner filed suit, the future installments had not matured.

The most recent notice of intention to collect attorney fees delivered to the defendants by Turner was contained in the complaint, which was filed on May 3, 1979. At that time, only five installments had fallen due. Thus, Turner is entitled to collect attorney fees on only $5,925, the total of these five past-due installments. This case is accordingly remanded to the trial court with direction that the judgment against Considine be amended to include 15% attorney fees on this portion of the indebtedness.

6. The court's determination that Turner was entitled to no pre-judgment interest was also erroneous. The contract provided for collection of interest "on amounts sixty (60) days past due at the rate of 8% per annum from the date of invoice." Because Turner never sent any invoices, the court correctly ruled that this provision did not apply. However, even though there may have been no liability for interest under the express provisions of the contract, Turner is nevertheless entitled to interest at the legal rate on any matured portion of the indebtedness from the date it matured. "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them . . ." Code § 57-110. The trial court is accordingly directed to amend the judgment against Considine to award Turner interest at the legal rate from the date it became due.

*The judgment against Wermischer is reversed. The judgment against The Considine Company of Georgia is affirmed, with direction that said judgment be amended to include attorney fees and interest in accordance with this opinion. McMurray, P. J., and Smith, J., concur.*

ARGUED SEPTEMBER 3, 1980 — DECIDED SEPTEMBER 30, 1980 —

*Philip S. Coe, Charles T. Corn,* for appellants.
*Lawrence S. Burnat,* for appellee.