61488. FRUIN-COLNON CORPORATION et al. v. AIR DOOR, INC.

QUILLIAN, Chief Judge.

Appellant was a contractor on a portion of the MARTA subway construction in Atlanta and in June 1978 submitted a purchase order to appellee-supplier in Ohio to provide a steel grating approximately 20 feet in diameter and a frame to hold it to cover an exhaust shaft for a subway tunnel under downtown Atlanta. The price was $20,353 with delivery by the fourth quarter of 1978. Appellee was required to supply shop drawings for the grate and framework in accordance with MARTA's specifications for approval by MARTA. The first four such shop drawings submitted by appellee were rejected by MARTA because they did not meet the load bearing capacity specification, and appellee was requested to provide calculations showing that its shop drawings would meet the load bearing specification. Appellant suggested that appellee have an engineer perform the calculations. Since appellee did not have an engineer, appellant said it knew of an engineer who could provide the calculations. Appellee authorized the appellant to have the engineer do this. The engineer's calculations showed that appellee's fourth shop drawings did not meet the load bearing specification. Appellee thereupon authorized appellant to have an engineer redesign the load bearing supports for the grating to meet the specification. Appellee admitted to agreeing to pay up to $500 for engineer work. An engineer designed several methods by which the supports could be made to meet the specification. Appellee then made a fifth shop drawing and incorporated one of the load bearing support designs recommended by the engineer. This shop drawing was approved by MARTA. The engineer charged appellant for the services, appellant paid the bill and back charged the cost to appellee's account.

During August, 1978, appellee told appellant that an escalation of the price would have to be made if the shop drawings were not approved by September. In November, appellee informed appellant that an escalation of $1500 was imposed. In January 1979, appellee escalated the price by an additional $460, due to a specification

change.

After the shop drawings were approved, appellee constructed the grating and frame and shipped it to appellant in April 1979. When appellant installed the frame, it discovered that the grating would not fit within the frame. Appellant thereupon modified the frame so that the grating would fit and informed appellee thereof some two weeks later. Appellee billed appellant $22,313 for the grating and frame, which amount included the two price escalations. Appellant, claiming that it had not agreed to the price escalations and that appellee owed appellant for the engineering services and the cost of modifying the frame so that the grating would fit; paid appellee only $16,684.74. Appellee brought this suit for the $5,628.26 due on the account, and appellant counterclaimed for breach of contract. In a non-jury trial, the trial court found for appellee in the amount claimed, less $200 for the engineer's services, from which judgment this appeal is taken. *Held:*

1. Was the trial court correct in granting the price escalations to appellee?

When appellee was presenting its case through its sole witness, an officer of appellee, the witness identified several documents. Among them was a copy of a letter from appellant to its contractor (Parsons, Brinckerhoff/Tudor) asking that a change order be granted to cover the cost of the two price escalations appellee had given appellant notice of. In cross examination, the witness admitted that price escalations were not permitted by the language of the purchase agreement and that he had no knowledge of appellant agreeing that appellee would be paid for the escalations. During further cross examination of the witness concerning the basis for the escalations, the trial judge, sua sponte, admitted in evidence appellant's letter to its contractor asking for a change order, and ruled that the letter modified the purchase agreement as to price. Invoking the parol evidence rule, the trial court then refused to permit appellant to present any evidence concerning the meaning and intent of the letter or that the price escalations were not agreed to by appellant. Subsequently appellant made offers of proof that its evidence would show that the letter was not an agreement with appellee, that its normal course of conduct was to ask for a change order if a supplier asked for a price escalation and pay the supplier only if the change order was granted, and that appellant had not agreed by the letter or otherwise to accept the escalations.

The trial court's rulings concerning the letter are claimed as error.

The letter on its face was not a communication between appellant and appellee, but was to a third party. It does not purport

nor appear to be a modification of the purchase agreement. If considered to be a modification, it is at least ambiguous as to the meaning and intent of appellant.

Parol evidence is admissible to explain all ambiguities in writings. Code Ann. § 38-502; *Sportsman Camping Centers of America v. Bagwell,* 140 Ga. App. 312 (3) (231 SE2d 118).

Since the letter does not appear to be a modification of the purchase agreement and is ambiguous as to whether it constituted a modification of the agreement, we find the trial court's ruling excluding any evidence explaining the letter and holding that the letter constituted a modification of the agreement was error.

2. Two enumerations challenge the trial court's failure to find that appellant could withhold from the purchase price the cost of engineer services. These services were provided through appellant to appellee at its request to determine whether appellee's shop drawings met the load bearing specification and to design a framework which would meet the specification. Appellant paid $2675 for engineer services and added an overhead and handling fee of $401.20 for a total amount of $3076.20, which was back charged to appellee's account. The trial court allowed $200 for engineer services in granting judgment to appellee.

Appellee's contention that appellant was not entitled to recover anything for engineer services because neither the claim for those services or cost thereof was included in the counterclaim is incorrect. Since the evidence of this claim was received without objection, appellant's counterclaim was amended by operation of law. Code Ann. § 81A-115 (b) (Ga. L. 1966, pp. 609, 627 through 1972, pp. 689, 694); *Grizzard v. Petkas,* 146 Ga. App. 318 (3) (246 SE2d 375); *Whelchel v. Smith,* 155 Ga. App. 901 (1) (273 SE2d 619).

Because appellee admitted to agreeing to pay up to $500 for the engineer's services, we find that the trial court's ruling that appellant was entitled to recover only $200 therefor was clearly erroneous. Code Ann. § 81A-152 (a) (CPA § 52 (a); Ga. L. 1969, pp. 645, 646; 1970, pp. 170, 171); *Lamas v. Baldwin,* 140 Ga. App. 37 (1) (230 SE2d 13).

Appellant contends that the trial court erred in not finding an implied agreement by appellee to pay for the reasonable value of the engineer's services provided for appellee by appellant.

The evidence shows that appellee agreed to have appellant engage an engineer on appellee's behalf to do the load bearing calculations on appellee's shop drawing. When the shop drawings were found to be below specification, appellee also agreed to have appellant have an engineer prepare designs which would meet the specification and then incorporated one of the designs into its finally approved shop drawings. Although the evidence is undisputed that

appellee agreed to pay up to $500 for engineer services, it is unclear whether this amount applied to all of the services or only to the engineer's calculations to determine whether appellee's shop drawings met the specifications.

" 'Ordinarily, when one renders services . . . valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof . . .' Code § 3-107. Even if there is an express contract, if services not contemplated by the original agreement become necessary to achieve the contractual objective and are rendered and accepted, the law implies and enforces performance of a promise to pay such extra services. [Cits.]" *Puritan Mills v. Pickering &c. Co.,* 152 Ga. App. 309 (1), 310 (262 SE2d 586).

While it appears from the evidence that an implied agreement to pay the reasonable cost of the engineer services could be found, whether such an agreement is found must rest upon factual determinations by the trial court as to whether appellee agreed to pay $500 for only a part or all of the engineer services.

Appellant's reliance upon Code Ann. §§ 109A-2—607 and 717 (Ga. L. 1962, pp. 156, 215, 231) as authority to withhold as damages for breach of the sales contract the cost of the engineer services is misplaced. Those Code sections apply only to the sale of goods. The engineer work was a separate agreement for the provision of services which does not fall under the Uniform Commercial Code. *Dixie Lime &c. Co. v. Wiggins Scale Co.,* 144 Ga. App. 145 (2) (240 SE2d 323).

3. The remaining issue concerns appellant's entitlement to damages for breach based on evidence that the grating and frame would not fit together when installed by appellant. It is contended that the trial court erred in holding that appellant did not give reasonably timely notice of the defect under Code Ann. § 109A-2—607 (3) (a), supra, and excluding evidence of the timeliness of the notice. Error is also asserted because the trial court held that appellant did not prove that it did not cause the defect in the fit of the grate and frame.

Appellee's witness testified that the circular perimeter frame for the grating was constructed in three pieces in its shop, laid out on a level surface and clamped together, and the grating fit within the frame before it was shipped.

Appellant's evidence was that when it received the grating and frame, it welded the frame together and imbedded it in concrete at the top of the airshaft. After the concrete had hardened, the grating was placed on the frame but would not fit inside the frame as it was designed to do. Appellant, without notice to appellee, thereupon enlarged the frame by grinding the rim away so that the grating would fit at a cost of $1184. Two weeks later appellant notified appellee of

the defect, what had been done to correct it, and that it was charging appellee a portion of the cost for the correction of the defect.

The trial court held that appellant was not entitled to recover for the cost of the correction of the defect because it had not given appellee reasonable notice thereof under Code Ann. § 109A-2—607 (3) (a), supra, which bars any remedy if such notice is not given in a reasonable time after a breach is discovered.

While the trial court did refuse to receive any evidence concerning the reasonableness of the notice and the customary way of proceeding in such cases, appellant did not offer any proof of what the evidence would have been. The exclusion of admissible testimony does not constitute reversible error unless the trial court is informed of what the witness would have said and how the testimony would have been material. *White v. Seaboard C.L.R. Co.,* 143 Ga. App. 821 (1) (240 SE2d 203); *Considine Co. v. Turner Communications Corp.,* 155 Ga. App 911 (2) (273 SE2d 652).

The reasonableness of the notice is a question for the fact finder. United States v. Crawford, 443 F2d 611 (4) (5th Cir. 1971). So also is the determination of which party was responsible for the defect. There was some evidence to support the trial court's determination of these issues, which was not clearly erroneous, and we find no error. Code Ann. § 81A-152 (a); *Yalanzon v. Sharon Const. Co.,* 141 Ga. App. 294 (2) (233 SE2d 220). However, the judgment is reversed for the reasons given in the first two divisions of this opinion.

*Judgment reversed. McMurray, P. J., and Pope, J., concur.*

Decided March 5, 1981.

*James E. Stephenson, William E. Dorris,* for appellants.
*Marvin Nodvin,* for appellee.