A91A1546. LAMB v. DECATUR FEDERAL SAVINGS & LOAN ASSOCIATION.
(411 SE2d 527)

BIRDSONG, Presiding Judge.

This appeal arises out of a suit for rent on a commercial lease transaction brought by appellee, Decatur Federal Savings & Loan Association (Decatur Federal) against T. Gordon Lamb, d/b/a Lamb & Associates (Lamb), a law firm. After both sides rested, the trial court granted appellee's motion for directed verdict.

On April 1, 1986, appellant entered a written lease for certain office space of appellee; the lease ran through September 1, 1991. In 1988, certain informal discussions began between the parties regarding the early termination of the lease. Appellee testified, through its agents, that appellant made an offer to terminate the lease, but cou-

pled its offer with certain requirements for concessions; accordingly, appellee never accepted the terms of the offer. Appellant Lamb and his brother testified at trial, and on appeal Lamb contends that appellee Decatur Federal made the offer for early termination, through its agents, that the offer for early termination was accepted, and that an oral contract to this effect thereby arose between the parties. For purposes of this appeal, we will accept as factual that the offer to terminate the lease originated from appellee Decatur Federal. The uncontroverted evidence shows that the Lamb law firm is a proprietorship, and that only T. Gordon Lamb is empowered to enter binding contracts in behalf thereof.

In granting appellee's motion for directed verdict, the trial court in essence found that, following an offer for early termination by Decatur Federal, Lamb wrote a letter, dated February 2, 1990, which constituted a counteroffer thereby rejecting and negating the original offer of Decatur Federal; and, that thereafter Decatur Federal did not assent to the terms of the Lamb counteroffer. In opposition, Lamb asserted before the trial court that his letter of February 2 did not contain a rejection of the Decatur Federal offer, and that prior to Decatur Federal's response to Lamb's suggestion (wherein Decatur Federal denied the existence of any agreement for early lease termination and demanded compliance with the terms of the written lease) he had accepted unconditionally the Decatur Federal offer by his actions "by moving without receiving any response to the concessions." Lamb also asserted he had "at no time received, prior to [his] commitment to move and [his new leasing] contract . . . response from anyone [at Decatur Federal] saying that they had withdrawn that offer [for early lease termination]." *Held*:

1. Appellant argues the trial court erred in invading the province of the jury by finding as a matter of fact that appellant's letter of February 2, 1990, constituted a rescission of a prior oral contract between appellant and appellee; and, that the trial court erred by determining the lease in question was not terminated between the parties by a new oral contract for early lease termination.

Appellant's third and fifth enumerations of error are without merit. Appellant in effect asserts before this court as he did before the trial court that his letter of February 2 does not constitute a counteroffer. Appellant has not directed our attention to any portion of the trial record which would show that he (being as was uncontrovertedly established by his own testimony the only person entitled to enter binding contracts on behalf of the Lamb law firm) ever accepted the oral offer of Decatur Federal to terminate the lease prior to his letter of February 2.

The February 2 letter reads pertinently as follows: "Over the past several months, our offices have *discussed an early termination of*

*our lease*, as it appears that Decatur Federal *may* have need for this space prior to our lease expiration date. . . . This *may* be an opportune time to make such a move, as there *appears to be numerous*, comparable and acceptable locations with adequate space to accommodate this firm. *However*, as discussed in the past, the cost of relocating this firm, including moving cost, computer and telephone installation, and the time and expense of employees in reorganizing will be *substantial*. Recently, we have discussed with Lillian Deaver *several concessions we request* of Decatur Federal *for vacating the premises early*. . . . I would *suggest a reasonable agreement as follows*: Decatur Federal would retain that deposit, allow three month's free rent, by which time we would be able to relocate, and pay $10,000.00 to reduce the extreme expense of this relocation. I look forward to working with you in this matter *and await your response*." (Emphasis supplied.)

In accordance with OCGA § 13-3-1, to form a valid contract there must be a subject matter, a consideration, and mutual assent by all parties to all the terms. In this regard, acceptance of an offer must be unconditional, unequivocal, and without variance of any sort; otherwise, there can be no meeting of the minds and mutual assent necessary to contract formation. Accordingly, a subsequent communication by one party to the alleged contract that varies even one term of the original offer is a counteroffer. *Panfel v. Boyd*, 187 Ga. App. 639, 645 (3) (371 SE2d 222). A counteroffer operates to reject an offer and to terminate the power of acceptance. *Duval & Co. v. Malcom*, 233 Ga. 784, 787 (2) (214 SE2d 356). Thus, " '[a]n attempted acceptance which seeks to modify one or more terms of the offer is of no legal effect as an acceptance. It is really a rejection of the offer, and a counter-proposition in lieu of the original offer, and must be accepted by the party making the original offer, in order to constitute an agreement.' [Cit.] 'An offer, when once rejected, loses its legal force and cannot be accepted thereafter so as to create a binding agreement unless it is renewed after the rejection by the original offerer. No revocation of the offer is, therefore, necessary to prevent its subsequent acceptance after it has once been rejected.' [Cit.] 'A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assent to the modification suggested.' " *Winder Mfg. Co. v. Pendleton Co.*, 27 Ga. App. 476, 478 (108 SE 823). The February 2 letter on its face unequivocally constituted a counteroffer, as a matter of law, thereby rejecting the original offer; the record contains no evidence showing that Decatur Federal thereafter renewed its original offer or assented to the modification suggested in Lamb's counteroffer. Moreover, as the counteroffer acted to reject immediately and nullify the original offer (*Duval*, supra;

*Winder*, supra), any subsequent performance on the part of appellant in quitting the premises could not unilaterally breathe life into the then non-existing original offer; appellee having declined to assent to the counteroffer could and did withdraw its original offer or proposition for early lease termination (OCGA § 13-3-2).

Considering the posture of this record in toto, we find the trial court did not err as asserted and properly relied on the precedent of *Winder* as dispositive of the issue of non-formation of the alleged oral contract.

2. Appellant asserts the trial court erred by supplanting the jury in ruling as a matter of fact that appellee did act reasonably and fulfilled its responsibility to mitigate damages, and in failing to place the issue of mitigation and the amount thereby owing from appellant to appellee under jury consideration.

In view of our holding in Division 1 above, we find it was appellant who repudiated the lease agreement. In *Duff's Enterprises v. B. F. Saul &c. Trust*, 170 Ga. App. 9, 10, n. 1 (316 SE2d 21), it was observed that unlike some jurisdictions Georgia does not require mitigation of damages in lease contracts. See generally Cobb & Eldridge, Ga. Law of Damages, § 28-15. Thus, in Georgia notwithstanding the provisions of OCGA § 13-6-5, " 'the general rule, that it is the duty of a party suffering from the breach of a contract to diminish, if possible, the damages, has no application to a contract of lease. . . . While generally a plaintiff must mitigate his damages when the defendant has breached a contract and while damages are generally a question for the jury, yet . . . where a lessee has breached his lease contract the landlord is entitled to recover his past-due rents less only what he has received from any new tenant.' " *Peterson v. Midas Realty Corp.*, 160 Ga. App. 333, 334 (287 SE2d 61). "A surrender of premises by a lessee has no legal effect until accepted by the lessor. [Cits.] The mere entry upon the premises . . . to protect the property after abandonment by the lessee will not amount to an acceptance of a surrender of a lease. [Cits.] Abandonment by the tenant [as occurred in this case] permits the landlord under the terms of the lease to terminate the lease, *or* to enter and obtain another tenant holding the original tenant liable for any deficiency, *or* to permit the premises to remain vacant and collect the agreed rent each month." (Emphasis supplied.) *Kimber v. Towne Hills Dev. Co.*, 156 Ga. App. 401 (1), 402 (274 SE2d 620). The uncontroverted evidence of record shows that appellee entered the premises in an attempt to obtain another tenant for the remainder of the lease term, and being unable to do so allowed the premises to remain vacant; and, there is no evidence that appellee either has received any sum as rent from any other source after appellant's breach or has made personal use of the leased premises so that it has obtained a direct benefit therefrom. Compare *Szabo Assoc. v. Peachtree-Pied-*

*mont Assoc.,* 141 Ga. App. 654 (234 SE2d 119); *Dehco, Inc. v. Greenberg,* 105 Ga. App. 236, 238 (2) (124 SE2d 311). In such circumstances mitigation of damages caused by appellant's breach of the lease agreement is not required. *Duff's Enterprises,* supra; *Peterson,* supra. Further, assuming mitigation of damages was required it is appellant who bears the burden of alleging and proving as a defensive matter appellee's failure to mitigate (*Western Host Atlanta v. Bass,* 183 Ga. App. 160 (1) (358 SE2d 312); *Mimms v. Betts Co.,* 9 Ga. App. 718 (2) (72 SE 271)), and "[s]uch a contention must be supported by evidence from which a jury could reasonably estimate the amount by which damages could have been mitigated" (*Considine Co. &c. v. Turner Comm. Corp.,* 155 Ga. App. 911, 913 (3) (273 SE2d 652)). Appellant has not met its burden in this regard. Thus, appellant "did not show as a matter of law, so as to preclude recovery altogether or of a particular amount, that plaintiff failed to mitigate his damages or to what extent he failed." *Central Nat. Ins. Co. &c. v. Dixon,* 188 Ga. App. 680, 682 (3) (373 SE2d 849). Appellant's fourth and sixth enumerations of error are without merit.

3. Where there is no evidentiary conflict as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed; thus, direction of a verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. *Armech Svc. Co. v. Rose Elec. Co.,* 192 Ga. App. 829, 831 (2) (386 SE2d 709). In view of our holdings in Divisions 1 and 2 above, and applying the principles of law pertaining to directed verdicts in light of the posture of the evidence in this case, we find that the trial court did not err in granting a directed verdict in favor of appellee, and that appellant's first and second enumerations of error are without merit.

*Judgment affirmed. Pope and Cooper, JJ., concur.*

## On Motion for Reconsideration.

In his motion for reconsideration, appellant attacks the statement of fact in our opinion that the uncontroverted evidence shows that T. Gordon Lamb is the only individual empowered to enter binding contracts in behalf thereof, and our statement that the law firm was a proprietorship. In so doing appellant states: "However, *factually,* such is not the case inasmuch as Herbert Lamb, as an agent for T. Gordon Lamb and T. Gordon Lamb d/b/a Lamb & Associates was empowered to act on behalf of T. Gordon Lamb d/b/a Lamb & Associates in such capacity as negotiation of lease agreements." (Emphasis supplied.) Our examination of the trial transcript does not support

this contention. We find that Herbert Lamb testified: "Again, I am not a signer of any of the leases. I am simply an *employee* of the firm. And I, of course, took this information to Gordon." (Emphasis supplied.) Appellant, T. Gordon Lamb, after having been placed under oath was cross-examined as to certain of the contents of a letter, plaintiff's Exhibit 13, written by appellant to a certain third party. In plaintiff's Exhibit 13, appellant wrote: "I wish to apprise you that Lamb & Associates is a proprietorship with T. Gordon Lamb as the owner. T. Gordon Lamb is the only individual who has authority to bind Lamb & Associates to any agreements whatsoever." In court, without posing any objection, appellant testified and admitted that he had claimed in the letter that Lamb & Associates "was a proprietorship." Thereafter, in response to a question as to whether the situation has changed; can Herbert Lamb bind Lamb & Associates, appellant testified: "No, he can't sign any contracts on my behalf." He further testified that Herbert Lamb could not bind Lamb & Associates, that he could not bind Lamb & Associates orally, and that it was he and not Herbert Lamb who accepted appellee's *alleged* offer to terminate early.

The above discussed testimony constituted an admission in open court that Herbert Lamb was only an employee of the firm, Herbert Lamb could not sign any contracts in behalf of appellant, Herbert Lamb could not bind Lamb & Associates, and he could not bind Lamb & Associates orally. An admission in open court is an admission in judicio; a judicial admission is conclusive. See generally *Lingerfelt v. State*, 255 Ga. 180 (3) (336 SE2d 250); *Hargroves v. State*, 179 Ga. 722, 725 (177 SE 561); *Johnson v. State*, 171 Ga. App. 91 (1) (318 SE2d 799); *Cape v. State*, 165 Ga. App. 825 (303 SE2d 77).

Additionally, appellant has failed to cite any page in the trial transcript or record where evidence was introduced to controvert the above testimony of appellant and his brother. Appellant must show error by the record; it is not the function of this court to cull the record on behalf of a party in search of instances of error. *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733 (8) (389 SE2d 251), citing *Armech Svc. Co. v. Rose Elec. Co.*, supra at 830.

*Motion for reconsideration denied.*

DECIDED OCTOBER 1, 1991 —
RECONSIDERATION DENIED OCTOBER 23, 1991.

*Lamb & Associates, Dennis E. Henry, R. Craig Henderson*, for appellant.

*McCurdy & Candler, Donald C. Suessmith, Jr., Dana B. Miles*,

for appellee.