A94A2086. MORELAND AUTO STOP, INC. et al. v. TSC LEASING CORPORATION.
(454 SE2d 626)

RUFFIN, Judge.

TSC Leasing Corporation ("TSC") sued Moreland Auto Stop, Inc. ("Moreland") for breach of a lease agreement, and the jury returned a verdict in favor of Moreland. TSC moved for j.n.o.v., and Moreland appeals the court's order granting that motion.

In December 1990, Moreland, an automotive parts store and service center, agreed to purchase a computer known as a "laser cat" from Triad Systems Corporation ("Triad"). As part of the agreement, Triad gave Moreland a 30-day money-back guarantee. Moreland financed the laser cat through a lease with TSC, a leasing company

specializing in computer leases. In connection with the lease, Moreland's president, Kelvin Davidson, executed a master lease, containing the general terms and conditions, and a lease schedule, identifying the specific equipment leased. The 30-day money-back guarantee on the laser cat was handwritten at the top of the master lease.

Subsequent to its acquisition of the laser cat, Moreland decided to purchase a more comprehensive computer system from Triad and financed that transaction through another TSC lease. In relation to this acquisition, Moreland entered into an agreement with Triad in which Triad agreed to install the equipment at Moreland's shop. The original laser cat master lease and a lease schedule identifying the specific equipment governed Moreland's lease with TSC. The lease schedule provided that the term of the lease was "non-cancelable" and would "commence on the date of acceptance of this Lease as set forth in the relevant Certificate of Acceptance." In further explaining the certificate of acceptance, paragraph five of the lease schedule provided that "[u]pon receipt (and installation, if applicable) of the Equipment from the Supplier . . . Lessee shall furnish Lessor [with a certificate of acceptance]. . . ."

The computer system was delivered to Moreland's shop in 24 boxes in March 1991. Approximately one week later, a Triad representative installed the mainframe, a terminal and a printer, but did not install the remaining equipment. On April 18, 1991, Davidson executed the certificate of acceptance acknowledging delivery, inspection and acceptance of the system by Moreland "for all purposes under [the lease] and [that it] is subject to all terms and conditions of the Lease." In bold face print directly below the signature line is a statement which reads as follows: "LESSEE: DO NOT SIGN THIS RECEIPT UNTIL YOU HAVE ACTUALLY RECEIVED, INSPECTED AND ACCEPTED THE ABOVE DESCRIBED PROPERTY, THEN RETURN TO TSC LEASING." Approximately a month and a half later, after repeated unsuccessful attempts to have Triad install the remaining equipment, Moreland shipped the entire system back to TSC. Although TSC initially refused to accept the equipment, after sending several notices of default to Moreland and accelerating the balance due under the lease, it eventually accepted it in October 1991. In January 1992, TSC sold the equipment at a private sale to Triad at a loss, then sued Moreland for the deficiency. After the jury returned a verdict in favor of Moreland, TSC moved the court for j.n.o.v., asserting the evidence demanded a verdict in its favor on all issues because installation of the equipment was not a condition precedent to commencement of the lease term and there was insufficient evidence to allow the issue of mitigation of damages to be presented to the jury. The trial court found the evidence and all reasonable deductions therefrom demanded a verdict in favor of TSC,

and accordingly granted its motion.

1. On appeal, Moreland asserts the trial court erred in granting the motion because there was sufficient evidence presented to the jury to support a finding that Moreland did not breach the leasing agreement with TSC. In support of this assertion, Moreland argues the parties did not intend for the lease to commence until the equipment was installed. Relying on paragraph five of the lease schedule providing that "[u]pon receipt (and installation, if applicable) of the Equipment from the Supplier . . . Lessee shall furnish Lessor [with a certificate of acceptance] . . . ," Moreland contends the certificate of acceptance executed by Davidson did not serve to commence the lease term because the equipment was not installed.

"The cardinal rule of construction [of contracts] is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. "[T]he court should ascertain the parties' intent after considering the whole agreement and interpret each of the provisions so as to harmonize with the others. [Cit.]" *Friedman v. Friedman*, 259 Ga. 530, 532 (3) (384 SE2d 641) (1989).

In this case, the lease clearly provides that it would "commence on the date of acceptance of this Lease as set forth in the relevant Certificate of Acceptance." The evidence shows the date of acceptance on the certificate of acceptance was April 18, 1991. There is no evidence to support Moreland's contention on appeal that the parties intended paragraph 5 of the lease schedule to establish installation as a condition precedent. Moreover, the only evidence concerning Moreland's understanding of paragraph 5 was the testimony of Davidson, its president, that he thought the provision meant TSC was supposed to install the system. When questioned further concerning his understanding of the lease, Davidson admitted he never read any of the documents before signing them. Since all the other testimony at trial and the entire agreement make it clear that the lease term would begin when the equipment was accepted, and Moreland's president accepted the equipment, this argument is without merit.

Likewise, we find no merit in Moreland's argument that the 30-day money-back guarantee applied to its lease of the computer system. All the testimony at trial showed that the guarantee applied only to Moreland's acquisition of the laser cat. Because there was no conflict in any of the evidence concerning commencement of the lease or the guarantee, and the evidence introduced, with all reasonable deductions therefrom demanded a verdict for TSC, we find the trial court did not err in granting its motion for j.n.o.v. See *Goggin v. Goldman*, 209 Ga. App. 251 (433 SE2d 85) (1993).

2. Moreland also asserts the trial court erred in granting TSC's

motion for j.n.o.v. because sufficient evidence was presented at trial for the jury to consider the issue of TSC's failure to mitigate their damages. While it is true that TSC had a duty to mitigate its damages, "[t]he burden is upon the party asserting that the opposite party could have lessened his damages, and such proof must include sufficient data to allow the jury to reasonably estimate how much the damages could have been mitigated." (Citation and punctuation omitted.) *Central Nat. Ins. Co. of Omaha v. Dixon*, 188 Ga. App. 680, 682 (3) (373 SE2d 849) (1988).

In the instant case, TSC introduced evidence showing that if the repossessed equipment were sold on the open market, the most it would sell for was $5,000. TSC further showed that because it was able to resell the equipment to Triad, it received $16,585.23. Although Moreland did not introduce any evidence showing how much TSC's damages could have been mitigated, it relies on the retail price at the time it originally purchased the equipment and its own discounted price of approximately $19,000 in contending the damages could have been mitigated. Simply relying on the original purchase price and contending, without any supporting evidence, that TSC could have received that price on the resale of the repossessed equipment is not sufficient for the jury to have considered how much its damages could have been mitigated. See *Considine Co. of Ga. v. Turner Communications Corp.*, 155 Ga. App. 911 (3) (273 SE2d 652) (1980). Therefore, Moreland "did not show as a matter of law, so as to preclude recovery altogether or of a particular amount, that [TSC] failed to mitigate [its] damages or to what extent [it] failed. [Cit.]" *Dixon*, supra at 682. Accordingly, we find no error.

3. Finally, although not enumerated as error, Moreland argues that TSC's motion should not have been granted because it addressed legal issues not raised by TSC in its motion for a directed verdict. Since " 'on appeal an enumeration of error cannot be enlarged by brief to give appellant viability to an issue not contained in the original enumeration'. . . [cit.]," *Simpson v. State*, 214 Ga. App. 587 (1) (448 SE2d 370) (1994), we will not consider this argument.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 28, 1995.

*Fortson & White, Michael D. St. Amand,* for appellants.
*Erck, Dever & Merlin, H. Michael Dever,* for appellee.